1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

ARTHUR J. GALLAGHER & CO.,

Case No. 20-cv-05505-EMC

8

Plaintiff,

9

v.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

10

DON TARANTINO, et al.,

11

Defendants.

Docket No. 23

12
13
14

Plaintiff Arthur J. Gallagher & Co. ("Gallagher") has filed suit against four former

15

employees and a competitor, Alliant Insurance Services ("Alliant"), who hired those former

16

employees.  Gallagher brings claims for, *inter alia*, breach of employment contract and trade

17

secret misappropriation.  Currently pending before the Court is Defendants' motion to dismiss.

18

Having considered the parties' briefs and accompanying submissions, as well as the oral argument

19

of counsel, the Court hereby **GRANTS** in part and **DENIES** in part Defendants' motion.

20

**I.      FACTUAL & PROCEDURAL BACKGROUND**

21

Gallagher alleges as follows in its complaint.

22

Gallagher is "a global insurance brokerage and risk management services firm."  Compl. ¶

23

9.  Alliant offers the same services and is a direct competitor of Gallagher.  *See* Compl. ¶ 50.  The

24

four individual defendants who left Gallagher and began working for Alliant are: Don Tarantino,

25

Bernadette Heater, Michael Machette, and Spencer Brush.

26

A.      Mr. Tarantino

27

Before working for Gallagher, Mr. Tarantino was a stockholder, officer, and director of

28

S.P. Tarantino Insurance Brokerage, Inc., "a full service retail insurance brokerage [that] offer[ed]

United States District Court
Northern District of California

both risk management and commercial insurance." Compl. ¶ 10.  In July 2006, Gallagher acquired Tarantino Insurance Brokerage, and Gallagher hired Mr. Tarantino.  Compl. ¶ 11.

Mr. Tarantino entered into an employment contract with Gallagher, dated July 11, 2006. *See* Compl. ¶ 11 & Ex. A (Tarantino Agmt.).  Under the contract, Mr. Tarantino agreed to protect Gallagher's confidential information even after the termination of his employment.  In addition, Mr. Tarantino agreed that, for two years after the termination of his employment, he would not solicit either Gallagher's customers or its employees.  *See* Compl. ¶ 12.

While working at Gallagher, Mr. Tarantino "managed/oversaw the book of business that Tarantino Brokerage [had] sold [to] Gallagher in 2006."  Compl. ¶ 15.  In 2009, Mr. Tarantino was "promoted to Chairman of Gallagher's Bay Area operations."  Compl. ¶ 16.  "In this role, [Mr.] Tarantino was responsible for assisting regional and branch management in various areas[,] including but not limited to providing advice and guidance in managing Gallagher's San Francisco operations, identifying acquisition opportunities, and providing oversight over employees working on his accounts."  Compl. ¶ 16.

B. Mr. Machette

Before working for Gallagher, Mr. Machette was a principal stockholder, officer, director, and/or key employee of Crist Elliott Machette Insurance Services, Inc., "a retail insurance brokerage offering risk management, commercial property/casualty, and personal lines of insurance products and services."  Compl. ¶ 13.  In January 2008, Gallagher acquired Machette Insurance Services, and Mr. Machette went to work for Gallagher.  *See* Compl. ¶¶ 13-14.

Mr. Machette entered into an employment contract dated January 30, 2008.  *See* Compl. ¶ 14 & Ex. B (Machette Agmt.).  The agreement imposed confidentiality obligations and precluded solicitation of both Gallagher customers and Gallagher employees for two years after the termination of the employment relationship.  *See* Compl. ¶ 14.

While working at Gallagher, Mr. Machette "managed/oversaw the book of business that [Machette Insurance Services] sold [to Gallagher] in 2008."  Compl. ¶ 18.  Mr. Machette's title was Area President for the San Francisco area (based in Lafayette).  *See* Compl. ¶ 18.  "In that role, [Mr.] Machette acted as a senior producer of Gallagher, and assisted with managing

2

1   [Gallagher's] operations in the Lafayette, California office."  Compl. ¶ 18.

2   C.    Alliant

3        In 2019, Alliant – which is a direct competitor of Gallagher – began to plan the defection

4   of Gallagher employees from the San Francisco and Lafayette offices.  Alliant focused first on the

5   recruitment of Mr. Tarantino and Mr. Machette.  *See* Compl. ¶ 19.  Alliant targeted the two

6   individuals because they were "key high-level Gallagher employees with substantial books of

7   businesses."  Compl. ¶ 38.

8        1.    Mr. Tarantino and Ms. Heater

9        After Alliant successfully recruited Mr. Tarantino, Alliant and/or Mr. Tarantino recruited

10  Ms. Heater.  Ms. Heater had previously worked with Mr. Tarantino at Tarantino Insurance

11  Brokerage, had joined Gallagher when Mr. Tarantino joined, and worked closely with Mr.

12  Tarantino at Gallagher.  (Like Mr. Tarantino, Ms. Heater had an employment contract with

13  Gallagher.  *See* Compl. ¶ 25 & Ex. C (Heater Agmt.)).  After she was recruited, Alliant and/or Mr.

14  Tarantino directed Ms. Heater to steal Gallagher's confidential information and/or trade secrets.

15  Alliant and/or Mr. Tarantino had Ms. Heater do the "dirty work" since she was a lower-level

16  employee compared to Mr. Tarantino and this would conceal Mr. Tarantino's involvement.  *See*

17  Compl. ¶ 21.

18       In accordance with the directive she received, Ms. Heater began to "mass-email[]"

19  Gallagher's confidential information and/or trade secrets to her personal email account.  *See*

20  Compl. ¶ 21.  In the months leading up to the resignation of Mr. Tarantino and Ms. Heater in July

21  2020, *see* Compl. ¶ 29, Ms. Heater

22           sent hundreds of documents to her personal email account, including
23           (1) current Gallagher client lists, which include information on the
             value of the clients' claims over the years, client contacts, internal
24           notes regarding particular clients' expectations and preferences; (2)
             internal Gallagher documents and strategies regarding client policy
25           structuring, client premium reports, and extensive budget and other
             financial information regarding Gallagher's business; and (3) client
26           retention and renewal strategies and information, among other
             confidential and/or trade secret information.

27  Compl. ¶ 22 (identifying, in particular, specific documents sent in the April-June 2020 time

28  period).

United States District Court
Northern District of California

3

1       In addition to the above, Mr. Tarantino took direct action in violation of Gallagher's rights.

2  Most notably, in late June 2020, Mr. Tarantino took two Gallagher clients out to golf and dinner,

3  purportedly on behalf of Gallagher but with the true goal of moving their business to Alliant.  *See*

4  Compl. ¶¶ 27-28.  At around this same time, Ms. Heater sent to her personal email account key

5  information about these two clients.  *See* Compl. ¶ 28.  Less than a month later, both Mr.

6  Tarantino and Ms. Heater resigned from Gallagher – as well as Mr. Tarantino's two sons who also

7  worked there – and within days thereafter, the clients that Mr. Tarantino had "wined and dined on

8  Gallagher's dime . . . terminated their business relationship with Gallagher in favor of [Mr.]

9  Tarantino at Alliant."  Compl. ¶¶ 29-30.

10       2.    <u>Mr. Machette and Mr. Brush</u>

11       A similar pattern played out with Mr. Machette and Mr. Brush.  After Alliant successfully

12  recruited Mr. Machette, Alliant and/or Mr. Machette recruited Mr. Brush.  Mr. Brush was Mr.

13  Machette's son-in-law, had joined Gallagher in 2012 (several years after Mr. Machette had

14  joined), and serviced many of the same Gallagher accounts as did Mr. Machette.  Alliant directed

15  Mr. Machette and Mr. Brush to steal confidential information and/or trade secrets from Gallagher,

16  and they did so – *e.g.*, sending client contact information and client policy information to Mr.

17  Brush's personal email account between April and July 2020, which was shortly before they

18  resigned in July 2020.  *See* Compl. ¶¶ 24, 34.  Through his actions, Mr. Brush also violated the

19  employment contract he had with Gallagher.  *See* Compl. ¶ 25 & Ex. D (Brush Agmt.).

20       3.    <u>Pattern/Practice by Alliant</u>

21       Defendants have solicited both Gallagher customers and Gallagher employees to leave

22  Gallagher in favor of Alliant – at times using information stolen from Gallagher in support of the

23  solicitation.  *See, e.g.*, Compl. ¶ 28 (alleging that Ms. Heater stole information about the two

24  clients that Mr. Tarantino wined and dined in June 2020); Compl. ¶ 34 (alleging that one

25  Gallagher client who left in favor of Alliant was "one of the clients whose information [Mr.]

26  Brush misappropriated in May and June of 2020"); Compl. ¶ 35 (alleging that "Defendants knew

27  which employees to target at Gallagher and how much to offer based on misappropriated

28  compensation and performance information the Individual Defendants acquired at Gallagher").

United States District Court
Northern District of California

United States District Court
Northern District of California

1  As a result, "[a]s of August 5, 2020, . . . Defendants have successfully caused close to fifty

2  (50) clients and 15 Gallagher employees to transfer to Alliant."  Compl. ¶ 44.

3  Gallagher is not the only company to suffer harm from Alliant's actions.  Alliant has

4  engaged in a pattern or practice of poaching customers and/or employees.  Alliant has been sued in

5  at least two other lawsuits (in Illinois federal court and Delaware state court); in both cases,

6  temporary injunctive relief was issued against Alliant.  *See* Compl. ¶ 42.  *See, e.g.*, *Aon Risk Servs.*

7  *Cos. v. Alliant Ins. Servs.*, 415 F. Supp. 3d 843, 852-53 (N.D. Ill. 2019) (in granting in part

8  plaintiff's motion for a temporary restraining order, ordering Alliant to return plaintiff's

9  confidential information and barring Alliant from soliciting former clients – but not merely

10  accepting or servicing them); *Mt. W. Series of Lockton Cos., LLC v. Alliant Ins. Servs.*, No. 2019-

11  0226-JTL, 2019 Del. Ch. LEXIS 231, at *68 (Ch. June 20, 2019) (in granting plaintiff's motion

12  for a preliminary injunction, prohibiting Alliant from, *e.g.*, soliciting customers or employees).  It

13  appears that both of these cases settled.

14  D.     Causes of Action

15  Based on, *inter alia*, the above allegations, Gallagher asserts the following claims for

16  relief:

17     (1)     Breach of employment contract (all four individual defendants).

18     (2)     Federal trade secret misappropriation (all Defendants).  *See* 18 U.S.C. § 1832 *et*

19             *seq.*

20     (3)     Trade secret misappropriation in violation of California Civil Code § 3426 *et*

21             *seq.* (all Defendants).

22     (4)     Breach of fiduciary duty (Mr. Tarantino and Mr. Machette only).

23     (5)     Aiding and abetting of unlawful client and employee solicitation, breach of

24             fiduciary duty, and trade secret and confidential information misappropriation

25             (Alliant only).

26     (6)     Intentional interference with prospective economic advantage (all Defendants).

27     (7)     Intentional interference with contractual relations (Alliant only).

28     (8)     Violation of California Business & Professions Code § 17200 (all Defendants).

1    (9)     Unjust enrichment (all Defendants).

2    (10)    Conspiracy (all Defendants).

3    (11)    Temporary and permanent injunctive relief (all Defendants).

## II.     DISCUSSION

### A.     Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

### B.     Breach of Contract

Gallagher has asserted a breach-of-contract claim against each of the individual defendants – *i.e.*, Mr. Tarantino, Mr. Machette, Ms. Heater, and Mr. Brush. According to Gallagher, Mr. Tarantino and Mr. Machette each breached his employment agreement by (1) soliciting Gallagher clients and Gallagher employees to leave Gallagher for Alliant and (2) taking Gallagher's confidential information and trade secrets with him to Alliant. *See* Compl. ¶ 57(a)-(b). As to Ms.

6

Heater and Mr. Brush, Gallagher asserts a breach of the employment agreement based on their taking of Gallagher confidential information and trade secrets to Alliant.  *See* Compl. ¶ 57(c).

Defendants move for dismissal of the breach-of-contract claim in its entirety, asserting the following arguments:

> (1) As to Mr. Tarantino and Mr. Machette, the employment contracts have "expired" and therefore cannot be enforced.

> (2) As to Mr. Tarantino and Mr. Machette, the noncompete provisions the employment contracts are unenforceable based on California Business & Professions Code § 16600, which prohibits restrictions on employee mobility.

> (3) As to all four individual defendants, Gallagher has failed to allege a plausible claim for breach of contract.

1.    <u>Mr. Tarantino and Mr. Machette: "Expiration" of Employment Agreements</u>

As noted above, Defendants argue first that the contract claims against Mr. Tarantino and Mr. Machette should be dismissed because their employment agreements have "expired" and therefore are unenforceable.

Section 1 of each individual's contract addresses the term of employment.

- Mr. Tarantino: "The Corporation employs the Executive and the Executive agrees to serve as an employee of the Corporation . . . for a term (the 'Term of Employment') beginning on July 1, 2006 and ending on June 30, 2011, unless earlier terminated under Section 4 or 5. . . . Employment of the Executive shall not necessarily cease as of the expiration of the Term of Employment; however, employment thereafter shall be on an at will basis."  Tarantino Agmt. § 1.

- Mr. Machette: "The Corporation employs the Executive and the Executive agrees to serve as an employee of the Corporation . . . for a term (the 'Term of Employment') beginning on January 30, 2008 and ending on January 30, 2013 unless earlier terminated under Section 5. . . . Employment of the Executive shall not necessarily cease as of the expiration of the Term of Employment;

United States District Court
Northern District of California

United States District Court
Northern District of California

1    however, employment thereafter shall be on an at will basis."  Machette Agmt.

2    § 1.

3    Defendants argue that, based on § 1 of each agreement, when the "Term of Employment"

4    ended (in June 2011 for Mr. Tarantino and January 2013 for Mr. Machette), the written terms of

5    the contract – including, *e.g.*, the no solicitation provisions – also ended, notwithstanding the fact

6    that each individual continued to work for Gallagher as an at-will employee.  According to

7    Defendants, "[w]hatever restrictions may apply to Mr. Tarantino and Mr. Machette after the

8    termination of their 'Term of Employment' are determined by the terms of their subsequent at-will

9    employment with Gallagher, and not the terms of their expired written agreements."  Mot. at 6.

10   Defendants' argument lacks merit.  The restrictive terms of the employment agreements

11   (which are in § 8) do not make reference to the "Term of Employment"; rather, they refer to the

12   "termination of . . . employment," and "employment" is a broad enough term to cover not just the

13   "Term of Employment" set forth in the agreements but also at-will employment which continued

14   thereafter.  For example:

15   > For a period equal to the longer of (i) five (5) years after the Closing
16   > Date, or (ii) two (2) years following *the termination of the*
     > *Executive's employment with the Corporation or any of its affiliates*
17   > (as applicable) for any reason whatsoever, the Executive will not,
     > directly or indirectly, solicit . . . the renewal, discontinuance or
18   > replacement of any insurance . . . for: (x) any account of the
     > Corporation or any of its affiliates; or (y) any Prospective Account
19   > of the Corporation or any of its affiliates, it being understood and
     > agreed that this Section 8(c) does not restrict or limit Section 8(b) or
20   > any other provision of Section 8.  For purposes of Sections 7 and 8
     > hereof, all references to "the Corporation" shall be deemed to
21   > include the Acquired Business.

22   Tarantino Agmt. § 8(c) (emphasis added).  Mr. Tarantino and Mr. Machette remained in

23   Gallagher's "employment" after the term of their Term of Employment in their agreements had

24   expired.

25   Furthermore, as Gallagher points out,

26   > limiting the Section 8 restrictive covenants to only the initial Term
     > of Employment would lead to an absurd result; that is, [Mr.]
27   > Tarantino and [Mr.] Machette could not solicit or divert the business
     > they sold to Gallagher during the initial Term of Employment, but
28   > could do so during their continuing [at-will] employment.

8

Opp'n at 4.

Finally, Judge Wilken's decision in *Arthur J. Gallagher & Co. v. Lang*, No. C 14-0909 CW, 2014 U.S. Dist. LEXIS 71286 (N.D. Cal. May 23, 2014), supports this Court's conclusion. In *Lang*, Gallagher sued a former employee for, *inter alia*, breach of an employment contract after he resigned from the company and formed a new insurance brokerage firm, and several clients left Gallagher in favor of the defendant's new firm. *See id.* at *3. Section 1 of the defendant's employment contract covered the term of employment and provided as follows:

> The Corporation [Gallagher] employs the Executive [Lang] and the Executive agrees to serve as an employee of the Corporation with the duties set forth in Section 2 for a term (the "Contract Term") beginning on September 10, 2008 and ending on August 31, 2011 unless earlier terminated under Section 5. Employment of the Executive shall not necessarily cease as of the expiration of the Contract Term; however, employment thereafter shall be on an at will basis but shall be subject to the requirements of Section 5(b) and Section 5(c) hereof.

*Id.* at *2. "Section 8 [of the employment contract] contained various non-competition and non-solicitation provisions governing [the defendant's] relationships with [Gallagher's] clients and employees for up to two years after he ceased working for the firm." *Id.*

In a motion to dismiss, the defendant challenged Gallagher's claim for breach of contract. According to the defendant, other than §§ 5(b) and 5(c), "all of the provisions of the employment agreement that Gallagher seeks to enforce [*i.e.*, the noncompetition and nonsolicitation provisions] lapsed in August 2011, more than two years before he allegedly breached them." *Id.* at *5. Judge Wilken rejected the argument:

> Although [§ 1 which provides for at-will employment after the "Contract Term"] set forth the terms by which each party could terminate the employment relationship after August 2011, it was not intended to render every other provision of the agreement unenforceable after that date. Several provisions of the agreement, including the non-competition and non-solicitation provisions at issue here, expressly state that they will apply for a period following *the conclusion of the employment relationship. See, e.g., id.* at 16 (providing that Lang's non-competition and non-solicitation obligations would remain in effect "for a period equal to two (2) years following the termination of [Lang's] employment"). Other provisions of the agreement expressly state that they will only apply "during the Contract Term" and "prior to the end of the Contract Term," *id.* at 2, 5, 7 (emphasis added). Thus, the contract explicitly distinguishes between provisions that lapse in August 2011 and

> provisions – other than Sections 5(b) and 5(c) – which apply after that date. Because the Court must give effect to these distinctions, it must reject Lang's construction of the employment agreement as a matter of law.

*Id.* at *6-7 (emphasis added).

As indicated by the above, Judge Wilken's interpretation of § 1 in the employment agreement accords with the Court's interpretation of § 1 in the employment agreements here. Furthermore, the Court notes that Mr. Tarantino and Mr. Machette's employment agreements – like the *Lang* defendant's employment agreement – also included provisions that were clearly limited in application to "during the Term of Employment" and "prior to the end of the Term of Agreement." *See, e.g.*, Tarantino Agmt. § 2(a) ("The Executive agrees during the Term of Employment to solicit, handle business for, sell insurance or render services related to insurance on behalf of the Corporation and its subsidiaries and to perform such other duties and assignments relating to the business of the Corporation and its subsidiaries as the management of the Corporation reasonably directs."); Tarantino Agmt. § 3(c) ("During the Term of Employment, the Executive shall enjoy the customary benefits afforded to employees of the Corporation."); Tarantino Agmt. § 5(a) ("Corporation shall have the right to terminate the employment of Executive prior to the end of the Term of Employment and with no liability on the part of the Corporation [under certain circumstances.]").

Accordingly, the Court rejects Defendants' contention that the Tarantino and Machette employment agreements are not enforceable because they "expired."

### 2.   Mr. Tarantino and Mr. Machette: Noncompete Provisions

Defendants argue that, even if the Tarantino and Machette agreements can be enforced, the contract claims based on alleged breach of the noncompete provisions should be dismissed. Both Mr. Tarantino and Mr. Machette's employment contracts with Gallagher contained noncompete provisions, including but not limited to the following[1]:

- "For a period equal to the longer of (i) five (5) years after the Closing Date, or (ii) two (2) years following the termination of the Executive's employment with the

---

[1] Although there are additional noncompete provisions, these are the most restrictive.

United States District Court
Northern District of California

Corporation or any of its affiliates (as applicable) for any reason whatsoever, the Executive will not, directly or indirectly, solicit . . . the renewal, discontinuance or replacement of any insurance . . . for: (x) any account of the Corporation or any of its affiliates; or (y) any Prospective Account of the Corporation or any of its affiliates, it being understood and agreed that this Section 8(c) does not restrict or limit Section 8(b) or any other provision of Section 8.  For purposes of Sections 7 and 8 hereof, all references to 'the Corporation' shall be deemed to include the Acquired Business."  Tarantino Agmt. § 8(c); Machette Agmt. § 8(c).

- "[F]or a period equal to the longer of (i) five (5) years after the Closing Date, or (ii) two (2) years following the termination of the employment of the Executive with the Corporation or its affiliates (as applicable) for any reason whatsoever, the Executive will not, directly or indirectly, solicit . . . any employee of the Corporation or its affiliates to leave the employ of the Corporation or its affiliates."  Tarantino Agmt. § 8(d); Machette Agmt. § 8(d).

Defendants argue that these noncompete provisions are unenforceable based on California Business & Professions Code § 16600.  Section 16600 provides: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."  Cal. Bus. &. Prof. Code § 16600.  As noted by the California Supreme Court, "section 16600 evinces a settled legislative policy in favor of open competition and employee mobility."  *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 946 (2008).

In response, Gallagher invokes an exception to 16600.  That exception – found in § 16601 – states in relevant part as follows:

> Any person who sells the goodwill of a business, or any owner of a business entity selling or otherwise disposing of all of his or her ownership interest in the business entity . . . , may agree with the buyer to refrain from carrying on a similar business within a specified geographic area in which the business so sold, or that of the business entity, division, or subsidiary has been carried on, so long as the buyer . . . carries on a like business therein.

*Id.* § 16601.  According to Gallagher, because Mr. Tarantino and Mr. Machette each sold their

11

United States District Court
Northern District of California

1   businesses to Gallagher, Gallagher can fairly restrict their ability to compete under § 16601.

2          Covenants not to compete typically "have their genesis in either an employer-employee

3   relationship, or in the sale of the 'goodwill' of a business."  *Monogram Indus., Inc. v. Sar Indus.,*

4   *Inc.*, 64 Cal. App. 3d 692, 697 (1976).  The latter kind of covenant is more likely to be enforced –

5   consistent with § 16601 – and is designed to prevent unfair competition.

6               In the case of the sale of the goodwill of a business it is "unfair" for
               the seller to engage in competition which diminishes the value of the
7               asset he sold.  In order to protect the buyer from that type of "unfair"
               competition, a covenant not to compete will be enforced to the
8               extent that it is reasonable and necessary in terms of time, activity
               and territory to protect the buyer's interest.
9

10  *Id.* at 698.  "One of the primary goals of section 16601 is to protect the buyer's interest in

11  preserving the goodwill of the acquired corporation."  *Hilb, Rogal & Hamilton Ins. Servs. v. Robb*,

12  33 Cal. App. 4th 1812, 1825 (1995).

13         Defendants argue that the noncompete provisions in Mr. Tarantino and Mr. Machette's

14  employment agreements are not reasonable and necessary.  For example, Defendants attack the

15  time restriction in each noncompete provision.  Defendants point out that the time restriction is not

16  simply tied to the date Mr. Tarantino or Mr. Machette sold his businesses to Gallagher; rather, the

17  restriction extends to two years after the employment relationship is terminated.  As a result, even

18  though Mr. Tarantino and Mr. Machette sold their companies back in 2006 and 2008, Gallagher is

19  seeking to restrict their ability to compete until 2022 – 14 to 16 years later – which goes well

20  beyond the need to protect Gallagher's interest in preserving the goodwill of the acquired

21  companies.  As another example, Defendants attack the activity restriction in each noncompete

22  provision.  Defendants point out that the activity restriction "bar[s] Mr. Tarantino and Mr.

23  Machette from servicing, receiving or otherwise handling business of *any [Gallagher] customers*

24  *and prospective customers*, which goes far beyond protecting the goodwill of *just the customers of*

25  *the acquired businesses*."  Mot. at 10 (emphasis in original).

26         The Court agrees with Defendants that the time restriction is problematic.  As Defendants

27  note, the time restriction is tied not just to the date of acquisition of Tarantino Insurance Brokerage

28  or Machette Insurance Services but also to the date of Mr. Tarantino or Mr. Machette's

                                                    12

United States District Court
Northern District of California

termination from employment – which means that the restriction could continue for years.  A restriction tied to a date of employment rather than time of sale bears no demonstrative relationship to goodwill.  The provision could remain in force for decades after the sale.  *See Fillpoint, LLC v. Maas*, 208 Cal. App. 4th 1170, 1182-83 (2012) (indicating that there was no problem with a covenant not to compete limited to the three-year period after one company acquired the other; but finding problematic a covenant not to compete that prevented the individual, "for one year after the termination of his employment, from [*e.g.*] making sales contacts or making actual sales to anyone who was [the acquired company's] customer or potential customer during the two years preceding the termination of [his] employment").  Gallagher points out that there was a similar time restriction in *Alliant Insurance Services, Inc. v. Gaddy*, 159 Cal. App. 4th 1292 (2008), where the court affirmed a preliminary injunction that enforced a covenant not to compete containing the following temporal restriction: "'the later of (i) five years after the Economic Effective Date or (ii) three (3) years after the effective date on which such Seller's employment, if any, with the Company . . . terminates.'"  *Id.* at 1296.  However, *Gaddy* did not address the temporal restriction on the merits.  As a practical matter, there was not much difference in *Gaddy* between the five years after the Economic Effective Date (March 2009) and the three years after the defendant's employment with the company terminated (October 2009).

Furthermore, here, the Court is presented with not just a restriction on time but also one on activity.  In *Strategix, Ltd. v. Infocrossing West., Inc.*, 142 Cal. App. 4th 1068 (2006), the court addressed an activity restriction, distinguishing between a nonsolicitation provision that is limited to the *acquired* business's customers/employees and one that also extends to the *acquiring* business's customers/employees, particularly because § 16601 refers to "the business so sold."  Cal. Bus. & Prof. Code § 16601.

> [W]e conclude courts may enforce nonsolicitation covenants barring the seller from soliciting the sold business's employees and customers.  These covenants prevent the seller from unfairly depriving the buyer of the full value of its acquisition, including its goodwill.  The sold business's goodwill is the "'expectation of … that patronage which has become an asset of the business.'"  A covenant not to solicit the sold business's employees and customers prevents the seller from eroding the very goodwill it sold, while allowing the seller otherwise to pursue its chosen business with

13

whatever employees and customers it can attract.

> On the other hand, nonsolicitation covenants barring the seller from soliciting *all* employees and customers of the buyer, even those who were *not* former employees or customers of the sold business, extend their anticompetitive reach beyond "the business so sold." They do more than ensure the buyer receives the full value of the business it bought, whose goodwill does not include "'the patronage of the general public.'" The covenants would give the buyer broad protection against competition wherever it happens to have employees or customers, at the expense of the seller's fundamental right to compete for employees and customers in the marketplace.

*Strategix*, 142 Cal. App. 4th at 1073.

The court went on to note that

> practical concerns [also] militate against barring the seller from soliciting the buyer's employees and customers, rather than the sold business's employees and customers. The seller presumably is familiar with the sold business's employees and customers as of the date of sale. Thus, the seller has some basis for determining who it may and may not solicit pursuant to the nonsolicitation covenants. But the seller is far less likely to be familiar with the buyer's employees and customers, especially as time passes. "An injunction must be narrowly drawn to give the party enjoined reasonable notice of what conduct is prohibited." Sellers would lack that reasonable notice if courts enforced nonsolicitation covenants directed at the buyer's employees and customers.

*Id.* at 1074.

Here, the nonsolicitation provisions apply not only to Mr. Tarantino's and Mr. Machette's old businesses, but also to all of Gallagher's accounts. For example, as indicated above, § 8(c) of each individual's employment agreement provides that the individual "will not, directly or indirectly, solicit . . . the renewal, discontinuance or replacement of any insurance . . . for: (x) any account of the *Corporation* or any of its affiliates . . . . For purposes of Sections 7 and 8 hereof, all references to 'the Corporation' shall be deemed to *include* the Acquired Business." Tarantino Agmt. § 8(c); Machette Agmt. § 8(c) (emphasis added). Thus, § 8(c) goes beyond the "Acquired Business" and applies broadly to the entire "Corporation." This exceeds the scope of any exemption under § 16601.

Gallagher acknowledges the principle articulated in *Strategix* but contends that *Gaddy*, 159 Cal. App. 4th at 1292, creates an exception that rule – *i.e.*, where the seller of the acquired company goes on to become an employee of the purchasing company. According to Gallagher, in

United States District Court
Northern District of California

1    such a circumstance, it is appropriate to have a nonsolicitation provision that applies more broadly

2    to customers/employees of the purchasing company, and not just those of the acquired company.

3    Gallagher's argument, however, is not convincing.  In *Gaddy*, the court justified a nonsolicitation

4    provision that applied to customers/employees of the purchasing company because "[a] covenant

5    for an employee not to solicit the employer's clients upon termination of the employment may be

6    valid *if necessary to protect the employer's trade secrets*."  *Id.* at 1306 (emphasis added; noting

7    that confidential client information was used to solicit).  This reasoning has nothing to do with the

8    seller of the acquired company having some kind of special status or a need to preserve the

9    goodwill of the acquired company.

10        Furthermore, *Gaddy* was issued prior to the California Supreme Court's decision in

11   *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937 (2008).  There, the court declined to "address

12   the applicability of the so-called trade secret exception to section 16600."  *Id.* at 946 n.4.  Post-

13   *Edwards*, there is not a clear consensus as to whether there is such an exception to § 16600,

14   although courts still have the ability "to enjoin the misuse of trade secrets as an independent

15   wrong, either as a tort or a violation of the Unfair Competition Law."[2]  *Richmond Techs., Inc. v.*

16   *Aumtech Bus. Sols.*, No. 11-CV-02460-LHK, 2011 U.S. Dist. LEXIS 71269, at *60 (N.D. Cal.

17   July 1, 2011).

18        Accordingly, in light of both the timing restriction *and* the activity restriction, the Court

19   concludes that the noncompete provisions in Mr. Tarantino and Mr. Machette's employment

20   agreements are not enforceable; the provisions do not fall within the protection afforded by §

21   16601 exception.  In so holding, the Court notes that Gallagher did not contend that any illegality

22   in the noncompete provisions is capable of being severed, which would allow for enforcement of

23   more narrowly tailored noncompete provisions.  Even if it had, the Court would reject the

24   argument.  In *Strategix*, the court noted that

-----

[2] Another possibility is that the contract between the parties will have a confidentiality provision that independently provides for protection for trade secrets.  *See Artec Grp., Inc. v. Klimov*, No. 15-cv-03449-EMC, 2016 U.S. Dist. LEXIS 170194, at *9 (N.D. Cal. Dec. 8, 2016) (citing a case where the so-called trade secret exception to § 16600 was deemed not necessary because the agreement at issue already contained a separate provision that provided protection for trade secrets).

United States District Court
Northern District of California

> [c]ourts have "blue penciled" noncompetition covenants with overbroad or omitted geographic and time restrictions to include reasonable limitations. But courts will not strike a new bargain for the parties "for the purpose of saving an illegal contract." In *Kolani*, the court declined to "rewrite the broad covenant not to compete into a narrow bar on theft of confidential information." We decline to rewrite overbroad covenants not to solicit [the purchasing company] Infocrossing's employees and customers into narrow bars against soliciting [the acquired company] Strategix's former employees and customers. Had the parties intended to reach such limited – and enforceable – covenants, they could have negotiated for them. We will not do so for the parties now.

*Strategix*, 142 Cal. App. 4th at 1074; *cf. Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 124 (2000) (in discussing an agreement to arbitrate, noting that "multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage"). The *Strategix* rationale is equally applicable to the instant case.[3]

---

[3] The Court acknowledges that there are some noncompete provisions in Mr. Tarantino and Mr. Machette's employment contracts that include only the time restriction above and not the activity restriction (*i.e.*, the activity restriction in these noncompete provisions is only with respect to the acquired business and does not extend more broadly to the acquiring business). *See, e.g.*, Tarantino Agmt. § 8(b); Machette Agmt. § 8(b). An argument could be made that these noncompete provisions (such as § 8(b)) should be upheld as reasonable because they are less restrictive than the noncompete provisions described above (such as § 8(c)).

To be sure, the employment agreements each contain a severance clause. Section 11(e) of the Tarantino Agreement provides:

> To the extent that any of the terms set forth in this Agreement or any word, phrase, clause or sentence is found to be illegal or unenforceable for any reason, such word, phrase, clause or sentence shall be modified or deleted in such manner so as to afford the Corporation and its affiliates the fullest protection commensurate with making this Agreement, as modified, legal and enforceable under applicable laws, and the balance of this Agreement shall not be affected thereby, the balance being construed as severable and independent.

Tarantino Agmt. § 11(e). The Machette Agreement has the same provision. *See* Machette Agmt. § 11(e). However, severance is not easy here. Even though the scope of activity barred by § 8(b) is not as problematic as § 8(d), its time limit is. To sever, the Court would have to blue-line the terms of the agreements. Furthermore, the Court is reluctant to consider the less restrictive noncompete provision in isolation. In the spirit of *Strategix*, the noncompete provisions of both §§ 8(b) and 8(d) should be considered in conjunction given their overlapping and overarching purpose.

United States District Court
Northern District of California

3.      All Individual Defendants: Failure to State a Claim for Relief

Finally, Defendants argue that the breach-of-contract claim should be dismissed for failure to state a claim for relief.  Because the Court has found the noncompete provisions contained in Mr. Tarantino and Mr. Machette's agreements unenforceable (and there are no noncompete provisions in Ms. Heater and Mr. Brush's agreements), the only question here is whether the four individual defendants plausibly breached their employment contracts by violating the confidentiality provisions contained therein.  *See, e.g.*, Tarantino Agmt. § 7(b) (providing that employee "has had and will be granted otherwise prohibited access to confidential and proprietary data of the Corporation and its affiliates . . . which is not known either to their competitors or within the insurance agency, consulting and brokerage business generally"; further providing that employee "will not, at any time during his employment by the Corporation or thereafter, directly or indirectly, divulge such Confidential Information or make use of it for his own purposes or the purposes of another"); Machette Agmt. § 7(b) (providing the same); Heater Agmt. ¶ 5 (containing a similar provision); Brush Decl. ¶ 2(B) (containing a similar provision).  This analysis is largely the same as that below – *i.e.*, has Gallagher plausibly alleged a claim for trade secret misappropriation? *See infra*.  As discussed below, the Court concludes that Gallagher has plausibly alleged a claim for trade secret misappropriation against the four individual defendants. Therefore, it has also plausibly alleged a breach of the confidentiality provisions in the employment contracts as well.

C.      Trade Secret Misappropriation (Federal and State)

Gallagher's trade secret misappropriation claim – brought pursuant to federal and state law – has been asserted against all Defendants.  In their motion to dismiss, Defendants primarily make two arguments in favor of dismissal of the misappropriation claims: (1) Gallagher has failed to identify the trade secrets at issue with sufficient specificity; and (2) Gallagher has failed to state a claim for relief that any defendant acquired, disclosed, or used a trade secret.

1.      Identification of Trade Secrets

As noted above, Defendants first contend that the trade secret misappropriation claim should be dismissed because Gallagher fails to adequately identify the trade secrets at issue.

> Courts have held that the DTSA and the CUTSA share the same pleading requirements for the identification of trade secrets. "[A] plaintiff need not 'spell out the details of the trade secret.'" However, the plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies."

*Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 880-81 (N.D. Cal. 2018).

With respect to Mr. Tarantino and Ms. Heater (and thereby Alliant as well), Gallagher alleges the theft of the following:

> (1) current Gallagher client lists, which include information on the value of the clients' claims over the years, client contacts, internal notes regarding particular clients' expectations and preferences; (2) internal Gallagher documents and strategies regarding client policy structuring, client premium reports, and extensive budget and other financial information regarding Gallagher's business; and (3) client retention and renewal strategies and information, among other confidential and/or trade secret information.

Compl. ¶ 22. Gallagher goes on in, in ¶ 22 of the complaint, to give examples of specific documents (which Ms. Heater emailed to her personal email account).

For Mr. Machette and Mr. Brush (and thereby Alliant again), Gallagher alleges the misappropriated information was "clients' contact information and policy information" (which Mr. Brush emailed to his personal email account). Compl. ¶ 24.

The trade secrets have been sufficiently pled. As indicated above, the basic test is (1) whether something beyond general knowledge is being claimed and (2) whether there is enough specificity to put the defendant on notice of what the theft is about. Clearly, that test has been met to the extent Gallagher claims misappropriation by Mr. Tarantino and Ms. Heater. Based on the description provided in ¶ 22 of the complaint, it is plausible that something other than general knowledge is at issue (*e.g.*, client preferences, business strategies on client policy structuring and client retention and renewal, internal budgets). Furthermore, Gallagher identified in ¶ 22 nine specific documents that it claimed contained its trade secrets; thus, here, there is little doubt here that Defendants have been put on adequate notice. *Compare Vendavo, Inc. v. Price f(x) AG*, No. 17-CV-06930-RS, 2018 U.S. Dist. LEXIS 48637, *6, 9 (N.D. Cal. Mar. 23, 2018) (where plaintiff

alleged as trade secrets "'information not expressly covered by its patents [such as] source code, customers lists and customer related information, pricing information, vendor lists and related information, marketing plans and strategic business development initiatives,'" etc., holding that description was set out in too "broad, categorical terms" and therefore was insufficient).

As for the description of the trade secrets allegedly misappropriated by Mr. Machette and Mr. Brush, it is admittedly a closer call. However, the Court still concludes that the trade secrets have been adequately identified, particularly because of the specific circumstances involved in this case (*i.e.*, a misappropriation in the insurance industry context) and because of Gallagher's clarification at the hearing that the trade secrets at issue were client contact information and client policy information (*i.e.*, not just general policy information).

### 2. Failure to State a Claim for Relief

Defendants argue next that, even if Gallagher has adequately identified the trade secrets at issue, it has still failed to state a claim for relief because it has not adequately pled that any defendant engaged in an act of misappropriation.

> "Under both the DTSA [Defend Trade Secrets Act] and the CUTSA [California Uniform Trade Secrets Act], "misappropriation" means either (1) the "[a]cquisition of a trade secret by another person who knows or has reason to know that the trade secret was acquired by improper means;" or (2) the "[d]isclosure or use of a trade secret of another without express or implied consent." 18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1(b).

*Alta Devices*, 343 F. Supp. 3d at 877.

### a. Ms. Heater and Mr. Brush

As a starting point, the Court considers the alleged misconduct of Ms. Heater and Mr. Brush (who worked with Mr. Tarantino and Mr. Machette, respectively). According to Gallagher, both Ms. Heater and Mr. Brush emailed trade secrets to their personal email accounts in the two- to three-month period before they resigned; they then used that information to woo Gallagher clients to Alliant and at least some clients did, in fact, leave for Alliant. These allegations are sufficient to support a claim for misappropriation against Ms. Heater and Mr. Machette. What is important is the timing of the emails and the fact that the emailed information related to clients who did actually leave Gallagher shortly thereafter. Defendants protest that the allegations do not

United States District Court
Northern District of California

1    preclude an innocent explanation – *e.g.*, Ms. Heater and Mr. Brush could well have been emailing

2    information to their personal email accounts simply as part of their work for Gallagher,

3    particularly given that the time period is when quarantine started.

4          The problem for Defendants is that (1) all reasonable inferences at this juncture are to be

5    made in Gallagher's favor and (2) "[i]f there are two alternative explanations, one advanced by

6    defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint

7    survives a motion to dismiss under Rule 12(b)(6).  Plaintiff's complaint may be dismissed only

8    when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is

9    implausible." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  *Compare Eclectic Props. E.,*

10   *Ltd. Liab. Co. v. Marcus & Millichap Co.*, 751 F.3d 990, 996-97 (9th Cir. 2014) (stating that,

11   "'[w]hen faced with two possible explanations, only one of which can be true and only one of

12   which results in liability, plaintiffs cannot offer allegations that are merely consistent with their

13   favored explanation but are also consistent with the alternative explanation[;] [s]omething more is

14   needed, such as facts tending to exclude the possibility that the alternative explanation is true, in

15   order to render plaintiffs' allegations plausible'").

16                    b.    Mr. Tarantino and Mr. Machette

17         The Court next evaluates the alleged misappropriation by Mr. Tarantino and Mr. Machette.

18   According to Gallagher, Mr. Tarantino directed Ms. Heater to steal the trade secrets, and Mr.

19   Machette did the same with Mr. Brush.  The main question here is whether there are sufficiently

20   specific facts to support the conclusory allegations that Mr. Tarantino and Mr. Machette gave such

21   a directive.

22         The Court concludes there are.  For example, it is plausible that Mr. Tarantino directed Ms.

23   Heater because they had previously worked together at Tarantino Insurance Brokerage, they both

24   left that firm at the same time to work for Gallagher, they continued to work closely together at

25   Gallagher, and they both left Gallagher at the same time.  In addition, just weeks before he

26   resigned, Mr. Gallagher essentially wined and dined a client; that client was one of the clients

27   whose information Ms. Heater emailed herself, and that client was one of the clients that left

28   Gallagher for Alliant.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    As for Mr. Machette, it is arguably a closer call.  There are fewer allegations to support a

2  directive from him to Mr. Brush.  Nevertheless, the Court holds that the allegations are still

3  adequate to support a claim for trade secret misappropriation.  Gallagher has alleged that Mr.

4  Brush is Mr. Machette's son and law and that the two worked closely at Gallagher, and even left

5  Gallagher at the same time.

6               c.      Alliant

7    Finally, the Court considers the alleged misappropriation by Alliant.  Similar to above,

8  Gallagher charges Alliant with giving the directive to take the trade secrets.  But here there are no

9  specific facts to support Alliant giving such a directive.  Mr. Tarantino, Ms. Heater, Mr. Machette,

10  and Mr. Brush could well have taken the trade secrets from Gallagher without Alliant's knowledge

11  – even if Alliant ultimately benefitted from their acquisition and use of the trade secrets.  In its

12  papers, Gallagher has suggested that one can reasonably infer Alliant's directive because the

13  company has a pattern or practice of stealing trade secrets from their competitors and using the

14  trade secrets to solicit customers/employees of the competitors.  However, the pattern/practice

15  evidence cited by Gallagher is simply the fact that Alliant has been sued twice and temporary

16  injunctive relief was issued against it.  Ultimately, those cases settled.[4]

17    Accordingly, the Court dismisses the trade secret misappropriation claim against Alliant

18  but not the individual defendants.  This dismissal is without prejudice; Gallagher can later move

19  for leave to amend if it uncovers evidence in discovery.

20  D.      State Law Claims – Common Law and § 17200

21    The remaining claims in Gallagher's complaint are state law claims based on the common

22  law or § 17200.[5]  As to these claims, Defendants assert that dismissal is warranted because all

23

24  [4] At the hearing, Gallagher also argued that Alliant gives individuals it hires an incentive to take
    trade secrets and clients with them when they leave their employers for Alliant – *i.e.*, because
25  Alliant structures employee compensation based on the volume of business the individuals bring
    with them to Alliant.  An incentive, however, particularly one that appears facially rational, is not
26  the same thing as a directive to violate the law.

27  [5] The causes of action are:

28         (4)      Breach of fiduciary duty (Mr. Tarantino and Mr. Machette only).
           (5)      Aiding and abetting of unlawful client and employee solicitation, breach of

claims are preempted by the California Uniform Trade Secrets Act ("CUTSA").  Defendants

further argue that Gallagher fails to state a claim for relief for the remaining claims.

        1.    <u>Preemption</u>

> CUTSA includes a savings clause (Section 3426.7[[6]]) that
> "preempt[s] claims based on the same nucleus of facts as trade
> secret misappropriation."  The savings clause does not affect
> "contractual remedies" and civil remedies "that are not based upon
> misappropriation of a trade secret."  "The preemption inquiry for
> those causes of action not specifically exempted by § 3426.7(b)
> focuses on whether other claims are not more than a restatement of
> the same operative facts supporting trade secret misappropriation. . .
> If there is no material distinction between the wrongdoing alleged in
> a [C]UTSA claim and that alleged in a different claim, the [C]UTSA
> claim preempts the other claim."

> Following the nucleus of facts test, a number of Courts . . . have
> held that CUTSA may supersede various claims including, *inter
> alia*, claims for conversion, common count, quantum meruit, unjust
> enrichment, breach of confidence, unfair competition, and
> intentional and negligent misrepresentation where the wrongdoing
> alleged in connection with such claims is the misappropriation of
> trade secrets.

---

> fiduciary duty, and trade secret and confidential information misappropriation
> (Alliant only).
>
> (6)    Intentional interference with prospective economic advantage (all Defendants).
> (7)    Intentional interference with contractual relations (Alliant only).
> (8)    Violation of California Business & Professions Code § 17200 (all Defendants).
> (9)    Unjust enrichment (all Defendants).
> (10)    Conspiracy (all Defendants).
> (11)    Temporary and permanent injunctive relief (all Defendants).

[6] Section 3426.7 does not contain a clear preemption provision.  However, California cases have
construed the statute as implicitly having a preemption provision:

> [S]ection 3426.7[] reads in pertinent part as follows: "(a) Except as
> otherwise expressly provided, this title does not supersede any
> statute relating to misappropriation of a trade secret, or any statute
> otherwise regulating trade secrets. [¶] (b) This title does not affect
> (1) contractual remedies, whether or not based upon
> misappropriation of a trade secret, (2) other civil remedies that are
> not based upon misappropriation of a trade secret, or (3) criminal
> remedies, whether or not based upon misappropriation of a trade
> secret."  Section 3426.7 thus "expressly allows contractual and
> criminal remedies, whether or not based on trade secret
> misappropriation."  "At the same time, §3426.7 implicitly preempts
> alternative civil remedies based on trade secret misappropriation."

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 954, 90
Cal. Rptr. 3d 247, 258 (2009).

United States District Court
Northern District of California

*SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 U.S. Dist. LEXIS 176284, at *9-11 (N.D. Cal. Dec. 11, 2012).

In the instant case, Defendants argue that the remaining claims – which include claims for breach of fiduciary duty, tortious interference, and unfair competition – are preempted because they are based on the same nucleus of facts as the CUTSA claim.  The Court agrees but only in part.

As the complaint is currently pled, Gallagher's claims are predicated *in part* on trade secret misappropriation.  *See* Compl. ¶ 95 (in aiding and abetting claim, alleging that "[t]he acts of unlawful client solicitation, employee solicitation, fiduciary duty breaches, and trade secret and confidential information misappropriation detailed above were done at the behest of, and with substantial assistance from[] Alliant"); Compl. ¶ 102 (in claim for intentional interference with prospective economic advantage, alleging that "Defendants engaged in wrongful conduct . . . by . . . breaching their written and enforceable contractual obligations . . . , misappropriating Gallagher's trade secrets and confidential information . . . , and breaching or encouraging the breach of [Mr.] Tarantino's and [Mr.] Machette's fiduciary duties . . . ."); Compl. ¶ 107 (making a similar allegation for claim for intentional interference with contract); Compl. ¶¶ 111, 114 (in § 17200 and unjust enrichment claims, referring to, *inter alia*, use of Gallagher's trade secrets and confidential information).  To that extent, there is preemption.

However, as indicated above, the claims are also based on conduct that does not implicate trade secret misappropriation.  For example, for the claim for breach of fiduciary duty, Gallagher has alleged misconduct on the part of Mr. Tarantino and Mr. Machette independent of any trade secrets.  *See, e.g.*, Opp'n at 19 ("Competing with Gallagher on behalf of a competitor while still employed with Gallagher is a clear-cut breach of fiduciary duty, regardless of whether Defendants used any trade secrets to do so.").  To that extent, there can be no basis for CUTSA preemption. *See Henry Schein, Inc. v. Cook*, No. 16-cv-03166-JST, 2017 U.S. Dist. LEXIS 29183, at *7 (N.D. Cal. Mar. 1, 2017) (concluding that claim for breach of fiduciary duty was not preempted because "[the defendant] did not necessarily rely on [the plaintiff's] trade secrets when she solicited customers to move their business to [another company]").

United States District Court
Northern District of California

2.     Failure to State a Claim for Relief

Because the claims are not entirely preempted by the CUTSA, the Court turns to Defendants' alternative argument that the claims should be dismissed for failure to state a claim for relief.

a.     Breach of Fiduciary Duty (Mr. Tarantino and Mr. Machette Only)

In support of the claim for breach of fiduciary duty, Gallagher alleges as follows: (1) Mr. Tarantino and Mr. Machette both held positions of trust and authority at Gallagher based on their jobs as "high level[] supervisors and managers of Gallagher," Compl. ¶ 88; (2) they thus owed Gallagher a fiduciary duty; and (3) they breached that duty by soliciting customers and employees "while they were still employed at Gallagher."  Compl. ¶ 90.  Consistent with the analysis in the trade secret misappropriation section, Gallagher has made sufficient allegations that Mr. Tarantino and Mr. Machette breached their fiduciary duty.

b.     Aiding and Abetting (Alliant Only)

Gallagher brings an aiding and abetting claim against Alliant because it "provided substantial assistance to the Individual Defendants in their unlawful client solicitation, employee solicitations, [and] fiduciary duty breaches."  Compl. ¶ 97.  Consistent with the analysis in the trade secret misappropriation section, there are insufficient allegations in the complaint that Alliant directed the individual defendants to engage in illegal conduct.  The Court therefore dismisses the claim, but leaves open the possibility of amendment later.

c.     Intentional Interference with Prospective Economic Advantage (All Defendants)

The elements of an interference with prospective economic advantage claim are "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant."  *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153, 131 Cal. Rptr. 2d 29, 63 P.3d 937 (2003)).  A plaintiff must "allege an act that is wrongful independent of the interference

24

1

> itself." *Id.* (citing *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
> 11 Cal 4th 376, 392-93, 45 Cal. Rptr. 2d 436, 902 P.2d 740 (1995)).
> "[A]n act is independently wrongful if it is unlawful, that is, if it is
> proscribed by some constitutional, statutory, regulatory, common
> law, or other determinable legal standard." *Korea Supply*, 29 Cal.
> 4th at 1159.

2

3

4   *Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*, No. 12-cv-05847-WHO, 2013 U.S. Dist.

5   LEXIS 151128, at *69 (N.D. Cal. Oct. 18, 2013).

6           In the claim for intentional interference with prospective economic advantage, Gallagher

7   alleges that Defendants interfered with the relationships that Gallagher had with its customers by

8   soliciting the customers.  *See* Compl. ¶ 102.  Consistent with the analysis in the trade secret

9   misappropriation section, Gallagher would appear to have – at first blush – a claim against the four

10  individual defendants, but not Alliant.  Defendants, however, have raised an argument as to why

11  the intentional interference claim is not viable as to Ms. Heater and Mr. Brush: they, unlike their

12  superiors, did not have a no solicitation provision in their employment contracts, and they, unlike

13  their superiors, did not owe a fiduciary duty to Gallagher.  No special relationship which might

14  give rise to an independent fiduciary duty is alleged. In other words, there is nothing that would

15  appear to make Ms. Heater and Mr. Brush's conduct here independently wrongful.  (As noted

16  above, trade secret misappropriation could not be considered here because of CUTSA

17  preemption.)

18          Accordingly, the Court concludes that Gallagher has a viable intentional interference claim

19  only as to Mr. Tarantino and Mr. Machette, but not Alliant, Ms. Heater, or Mr. Brush, but leaves

20  open the possibility of amendment later.

21                  d.      <u>Intentional Interference with Contract (Alliant Only)</u>

22

23

> The elements of intentional interference with contractual relations
> are often listed as follows: "(1) a valid contract between plaintiff and
> a third party; (2) defendant's knowledge of this contract; (3)
> defendant's intentional acts designed to induce a breach or disruption
> of the contractual relationship; (4) actual breach or disruption of the
> contractual relationship; and (5) resulting damage." *Quelimane Co.,
> Inc. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 55 (1998)
> (quoting P*acific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal.
> 3d 1118, 1126 (1990)).

24

25

26

27

28  *Andrew Smith Co. v. Paul's Pak, Inc.*, 754 F. Supp. 2d 1120, 1132-33 (N.D. Cal. 2010).

In its claim for intentional interference with contract, Gallagher alleges that Alliant knew the individual defendants had enforceable employment contracts with Gallagher and induced them to breach those contracts by soliciting customers and employees.  This claim is problematic for two reasons: (1) To the extent Gallagher focuses on breach of contract by Mr. Tarantino and Mr. Machette, as discussed above, the no solicitation provisions of their contracts are not enforceable; (2) to the extent Gallagher focuses on breach of contract by Ms. Heater and Mr. Brush, neither one was subject to a nonsolicitation provision.

The Court therefore dismisses this intentional interference claim with prejudice.

e.    Unfair Competition (§ 17200) and Unjust Enrichment (All Defendants)

These claims are derivative claims, and the parties agree the claims should rise or fall with the other claims.

f.    Conspiracy and Injunctive Relief (All Defendants)

Defendants argue that conspiracy and injunctive relief are not independent causes of action but rather are (1) a theory of liability (conspiracy) or (2) a remedy for a cause of action (injunctive relief).  Gallagher does not dispute such but offers to amend to make clear that it is asserting conspiracy liability and injunctive relief.  The Court shall allow this amendment.

## III.    CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss.  More specifically, the Court rules as follows.

- Breach of contract (individual defendants only).  The noncompete provisions in Mr. Tarantino and Mr. Machette's contracts are not enforceable.  The Court therefore dismisses with prejudice the contract claim to the extent it is based on an alleged breach of the noncompete provisions by Mr. Tarantino and Mr. Machette.  The only remaining contract theory is that the individual defendants breached the confidentiality provisions in their employment contracts.  Here, Gallagher has adequately pled a claim for relief.

- Trade secret misappropriation (federal and state) (all Defendants).  Gallagher has adequately pled a misappropriation claim against the four individual defendants,

United States District Court
Northern District of California

1   but not Alliant.  The dismissal of Alliant is without prejudice should Gallagher later

2   uncover a basis to assert a misappropriation claim.

3   • Remaining state claims.

4     ○ There is partial CUTSA preemption – *i.e.*, to the extent the claims are

5       predicated on trade secret misappropriation, but not otherwise.

6     ○ Breach of fiduciary duty (Mr. Tarantino and Mr. Machette only).

7       Consistent with the misappropriation claim, there is enough support a claim

8       against Mr. Tarantino and Mr. Machette.

9     ○ Aiding and abetting (Alliant only).  Consistent with the misappropriation

10      claim, Gallagher has not pled a viable claim against Alliant.  As above, the

11      dismissal is without prejudice.

12    ○ Intentional interference with prospective economic advantage (all

13      Defendants).  Gallagher has adequately pled a claim against Mr. Tarantino

14      and Mr. Machette, but not Alliant, Ms. Heater, or Mr. Brush.  As above, the

15      dismissal is without prejudice.

16    ○ Intentional interference with contractual relations (Alliant only).  The claim

17      is dismissed with prejudice.

18    ○ Violation of § 17200 and unjust enrichment (all Defendants).  These are

19      derivative claims that rise or fall with the above claims.

20    ○ Conspiracy and injunctive relief (all Defendants).  The Court gives

21      Gallagher leave to amend so that it can assert a theory of liability

22      (conspiracy) and a remedy (injunctive relief).

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

Gallagher has four weeks to file an amended complaint.  Gallagher may amend only where the Court has expressly permitted amendment at this time.

This order disposes of Docket No. 23.

**IT IS SO ORDERED**.

Dated: November 2, 2020

_____
EDWARD M. CHEN
United States District Judge