HOLLAND & KNIGHT LLP
Sarah A. Marsey (SBN 297911)
Alex Hadduck (SBN 312962)
50 California Street, Suite 2800
San Francisco, CA 94111
Telephone:   415-743-6900
Facsimile:   415-743-6910
E-mail: sarah.marsey@hklaw.com
        alex.hadduck@hklaw.com

Attorneys for Plaintiff
ARTHUR J. GALLAGHER & CO.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR J. GALLAGHER & CO., a Delaware Corporation,<br><br>            Plaintiff,<br><br>      vs.<br><br>DON TARANTINO, an individual, BERNADETTE HEATER, an individual, MICHAEL MACHETTE, an individual, and SPENCER BRUSH, an individual,<br><br>            Defendants. | CASE NO.: 20-cv-05505-EMC<br><br>**PLAINTIFF ARTHUR J. GALLAGHER & CO.'S SECOND AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

*Holland & Knight LLP*
*50 California Street, Suite 2800*
*San Francisco, CA 94111*
*Tel: 415.743.6900 Fax: 415.743.6910*

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900  Fax: 415.743.6910

Comes now Plaintiff ARTHUR J. GALLAGHER & CO. ("Gallagher") for its Complaint against DON TARANTINO, BERNADETTE HEATER, MICHAEL MACHETTE, and SPENCER BRUSH (together, the "Defendants"), and alleges:

## NATURE OF THE CASE

1.      For at least nine months, Alliant Insurance Services, Inc. ("Alliant"), a direct competitor of Gallagher in the competitive insurance brokerage market, conspired with key Gallagher executives in the Bay Area, *while they were still employed by Gallagher,* to raid Gallagher's Northern California operations by hiring away 15 of Gallagher's employees, stealing confidential information and trade secrets, and targeting key performers to improperly gain access to protected client and employee information and use it to take millions of dollars in business.

2.      In a mass resignation, more than 10 employees left Gallagher over a span of five days without providing any notice or transition period and immediately began working for Alliant. This coordinated attack on Gallagher was planned over several months.  The attack included the stealing of key customer data, soliciting Gallagher customers in the weeks leading up to the employees' departures (including golf outings during the COVID-19 quarantine period charged to Gallagher less than a month prior to the resignations), and sabotaging Gallagher's ability to keep its customers.  As part of this coordinated attack, nearly *fifty (50) customers left Gallagher within a few days* of the mass resignation.  In a span of weeks, Alliant successfully *poached 15 employees* from Gallagher, and, with the assistance of Defendants, is continuing to target additional key Gallagher employees, using confidential information on relationships, salary and benefits to do so.

3.      Defendants coordinated the mass departure over months while they were still employed by Gallagher to maximize disruption on Gallagher's operations (during the unprecedented COVID-19 pandemic) and benefit from Gallagher's confidential information to create and unfairly take advantage of the appearance of instability.  Using that confidential information, Defendants then called additional Gallagher employees, encouraged those employees to move to Alliant, and then told customers that additional key Gallagher employees would be joining Alliant to further coerce the customers or employees to move.  For example, Defendants told a key customer that its service manager ("CSM"), with whom the customer had a close

SECOND AMENDED COMPLAINT                                    Case No.: 3:20-CV-05505-EMC

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900  Fax: 415.743.6910

1   relationship, would be joining Alliant.  The customer planned to move its business; however, when

2   the customer learned that the CSM was not joining Alliant as indicated, the customer stayed with

3   Gallagher.

4       4.      In addition to Defendants' violating their employment agreements and breaching

5   fiduciary duties they owed Gallagher, Defendants also misappropriated *hundreds of Gallagher*

6   *internal documents* containing confidential and/or trade secret information.  These bad acts subject

7   Gallagher to irreparable harm, devalue Gallagher's confidential and trade secret business

8   information through improper use and/or dissemination, and have caused Gallagher to lose valuable

9   customer accounts and employees.

10      5.      Both Don Tarantino ("Tarantino") and Michael Machette ("Machette") previously

11  sold their insurance agencies to Gallagher for significant monies several years ago.  *Several of the*

12  *clients stolen by Defendants in violation of their contractual and fiduciary duties are the very same*

13  *ones that Tarantino and Machette conveyed to Gallagher in the acquisitions.*  Upon information

14  and belief, Alliant has structured its deals with Tarantino and Machette not in the typical nature of

15  employment agreements but with large compensation packages more akin to a purchase of these

16  clients from Tarantino and Machette, even though the clients were Gallagher clients.  Alliant did so

17  because it conspired with Tarantino and Machette to remain employed as double agents with

18  Gallagher for many months to steal confidential information, solicit customers, and solicit

19  employees of Gallagher to ensure that the business would move.

20      6.      Alliant's conduct is consistent with its national strategy of stealing business

21  unlawfully from competitors, which often results in the imposition of injunctions and other negative

22  rulings against it.  Indeed, Alliant touts a growth strategy of "leveraged" hires—in reality, raids—of

23  high-end producers from competing firms with the goal of stealing existing books of business and

24  the employees who service those accounts.  In many cases, as is the case here, Alliant targets

25  producers who joined a competitor in connection with an acquisition of an existing book of

26  business.  This has resulted in a string of lawsuits accusing Alliant of committing many of the same

27  tortious acts that characterize its ongoing raid on Gallagher.

28  //

## GENERAL ALLEGATIONS

7.      Gallagher is a global insurance brokerage and risk management services firm. Alliant attempts to compete with Gallagher.

8.      In July 2006, Gallagher acquired S.P. Tarantino Insurance Brokerage, Inc. ("Tarantino Brokerage"), a full service retail insurance brokerage offering risk management and commercial insurance.  Gallagher acquired all of Tarantino Brokerage's customer accounts and business goodwill, and hired Defendant Tarantino, a stockholder, officer, and director of Tarantino Brokerage at the time, to manage and service the acquired business on behalf of Gallagher.

9.      In connection with the sale of his business to Gallagher, Tarantino agreed to an employment agreement with Gallagher dated July 11, 2006, attached hereto as **Exhibit A** (the "Tarantino Agreement")[1].  The Tarantino Agreement confirmed that its entry was directly tied to Gallagher's acquisition of the Tarantino Brokerage, including its goodwill.  Exh. A, recitals.

10.     The Tarantino Agreement required Tarantino to protect Gallagher's confidential business information after the termination of his Gallagher employment, including the return of all Gallagher business information and property.  Exh. A, § 7.

11.     In January 2008, shortly after Gallagher's acquisition of Tarantino Brokerage, Gallagher acquired Crist Elliott Machette Insurance Services, Inc. ("CEM"), a retail insurance brokerage offering risk management, commercial property/casualty, and personal lines of insurance products and services.  CEM specialized in the real estate and construction industries.  Gallagher acquired all of CEM's customer accounts and business goodwill.  Defendant Machette was a principal stockholder, officer, director and/or key employee of CEM.

12.     In connection with the sale of his business to Gallagher, Machette agreed to an employment agreement with Gallagher dated January 30, 2008, attached hereto as **Exhibit B** (the "Machette Agreement").  The Machette Agreement confirmed that its entry was directly tied to Gallagher's acquisition of CEM, including its goodwill.  Exh. B, recitals.  The Machette Agreement

---

[1] The Employment Agreements attached as Exhibits A – B to this Complaint are redacted to protect sensitive information.  An unredacted copy of the agreements will be provided to the Court under seal upon entry of a confidentiality order, if requested.  Defendants already have copies of the unredacted agreements, but Plaintiff will provide additional copies upon request.

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900  Fax: 415.743.6910

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900  Fax: 415.743.6910

contained confidentiality obligations and required Machette to protect Gallagher's confidential business information after the termination of his Gallagher employment, including the return of all Gallagher business information and property.  Exh. B, § 7.

13.     At all times relevant to this Complaint, Tarantino managed/oversaw the book of business that Tarantino Brokerage sold Gallagher in 2006, and Gallagher supported Tarantino's efforts to retain and grow this business.

14.     In 2009, Tarantino was promoted to Chairman of Gallagher's Bay Area operations, a high level manager of Gallagher.  In this role, Tarantino was responsible for assisting regional and branch management in various areas including but not limited to providing advice and guidance in managing Gallagher's San Francisco operations, identifying acquisition opportunities, and providing oversight over employees working on his accounts.

15.     Tarantino was paid a management fee in addition to his broker salary, and was part of Gallagher's management team that made important strategic decisions on key issues such as recruiting and mergers and acquisitions.  As Chairman of Gallagher's Bay Area operations, Tarantino also used Gallagher's trade secrets and confidential information to foster and grow the business that he had sold to Gallagher.

16.     At all times relevant to this Complaint, Machette managed/oversaw the book of business that CEM sold Gallagher in 2008, and Gallagher supported Machette's efforts to retain and grow this business.  During this time, Machette was Gallagher's Area President for the San Francisco area.  In that role, Machette acted as a senior producer of Gallagher, and assisted with managing Gallagher's operations in the Lafayette, California office.  As Area President of Gallagher's Lafayette office, he also used Gallagher's trade secrets and confidential information to foster and grow the business that he had sold Gallagher in 2008.

17.     In 2019, and unbeknownst to Gallagher, Alliant and Defendants began planning a mass defection of Gallagher employees from Gallagher's San Francisco and Lafayette offices. Upon information and belief, Alliant's primary recruitment efforts were of Tarantino and Machette, two Gallagher leaders and producers that Alliant knew had previously sold their books of business to Gallagher.  Upon information and belief, Alliant knew that cross-selling capabilities existed

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900  Fax: 415.743.6910

between the Gallagher accounts serviced by both Tarantino and Machette, and believed that, despite their fiduciary duties, both Tarantino and Machette would be able to bring both customers and employees to Alliant if the price was right.

18.    For months, Gallagher's employees, including the Defendants, acted as double-agents.  While Gallagher believed that its employees were conducting business for the benefit of Gallagher, in reality, the defecting employees were already carrying-out Alliant's objectives.

19.    One of those objectives was to begin competing with Gallagher, on Alliant's behalf, while the Defendants were still employed with Gallagher.  This took the form of soliciting Gallagher clients and employees to join the Defendants at Alliant while still employed by Gallagher.

20.    Another objective was the mass misappropriation effort that spanned months and resulted in the potential dissemination and misuse of hundreds of Gallagher confidential and/or trade secret business documents.

21.    Defendant Bernadette Heater ("Heater") is a former employee of the Tarantino Brokerage who joined Gallagher with Tarantino.  Heater worked closely with Tarantino at Gallagher, and left Gallagher to join Alliant together with Tarantino.  After Alliant's recruitment of Tarantino, and presumably after a deal in principle was reached, Heater began mass-emailing Gallagher's confidential and/or trade secret business information to her personal email account.  Upon information and belief, Heater emailed these materials to her personal account at the direction of, and for the benefit of, Alliant and Tarantino.  Upon information and belief, Tarantino and Alliant used Heater to steal this information, knowing that she was not as high-level of an employee as Tarantino in an attempt to shield Tarantino from these wrongful acts.

22.    In the months and days leading up to Heater's and Tarantino's Gallagher resignations, Heater sent hundreds of documents to her personal email account, including (1) current Gallagher client lists, which include information on the value of the clients' claims over the years, client contacts, internal notes regarding particular clients' expectations and preferences; (2) internal Gallagher documents and strategies regarding client policy structuring, client premium reports, and extensive budget and other financial information regarding Gallagher's business; and

1    (3) client retention and renewal strategies and information, among other confidential and/or trade

2    secret information.  For example, the following documents are just some of the misappropriated

3    records:

4    • Gallagher's proprietary strategy for securing clients' renewal of insurance policies,
5      including step-by-step renewal processes and workflow assignments by position.
       Heater emailed this proprietary information to her personal email account on April 2,
6      2020;

7    • A list containing critical contact information for Gallagher-assigned underwriters at
       insurance carriers working on the Tarantino accounts, including email addresses,
8      phone numbers, and billing and audit contacts.  Heater emailed this proprietary
       information to her personal email account on June 23, 2020;
9

10   • A document titled "customerreports," which contains an executive summary of
       claims for all lines of insurance coverage for an account that has since left Gallagher
11     to join Alliant.  Heater emailed this proprietary information to her personal email
       account on April 16, 2020;
12

13   • A proprietary Gallagher client list, complete with customer addresses, email
       addresses, and primary points of contact for Tarantino's Gallagher accounts.  Heater
14     emailed this proprietary information to her personal email account on June 11, 2020;

15   • A proprietary Gallagher spreadsheet identifying certain of Gallagher's clients,
       carriers associated with those clients, premiums, policy numbers, expiration dates,
16     and a description of coverage.  Heater emailed this proprietary information to her
       personal email account on June 18, 2020;
17

18   • Renewal quotes and policies for a July 1, 2020 renewal regarding a valuable
       Gallagher client who has since left Gallagher in favor of Alliant.  Heater emailed this
19     information to her personal email account on May 5, 2020;

20   • Historical insurance premium information for a valuable Gallagher client who has
21     since left Gallagher in favor of Alliant.  Heater emailed this information to her
       personal email account on June 5, 2020;
22

23   • Analyses of client's properties and premiums for a valuable Gallagher client who has
       since left Gallagher in favor of Alliant.  Heater emailed this information to her
24     personal email account on June 29, 2020;

25   • A resume for a potential Gallagher recruit who Defendants later recruited in favor of
26     Alliant.  Heater emailed this candidate's resume to her personal email account on
       June 1, 2020.
27

28

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900  Fax: 415.743.6910

6

1

2

3

4

5

6

7

8

9

10

11

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900  Fax: 415.743.6910

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The above list of misappropriated materials is a sampling of stolen information and is not exclusive; in fact, *hundreds of additional documents were misappropriated in Defendants' coordinated attack on Gallagher*.

23.     Like Tarantino and Heater, Machette, together with Defendant Spencer Brush ("Brush"), Machette's son-in-law who joined him as an insurance broker at Gallagher in 2012, also began misappropriating information from Gallagher leading up to their Gallagher resignations and Alliant employment.  Upon information and belief, Brush and Machette did so at the direction of, and for the benefit of, Alliant and Machette.  Like the team of Tarantino and Heater, the Machette/Brush team serviced many of the same accounts at Gallagher, and information emailed to Brush's personal email account related to those Gallagher clients.  The Machette/Brush misappropriation materials include emails containing Machette's Gallagher clients' contact information and policy information, which emails were sent to Brush's personal email account between April and July, 2020.  Gallagher continues to investigate additional misappropriation.

24.     The misappropriated information constitutes the lifeblood of Gallagher's client service, retention, and business strategies.  This information includes client-tailored product structuring strategies and client preference information that was generated by the longstanding relationships Gallagher fostered with its clients over the course of years, and at great cost.  Gallagher generates this information through costly and proprietary methods, which have been refined through trial and error, significant analysis and data, and decades of business practice.  Gallagher invests considerable time, resources, money, and ingenuity in developing the information stolen by Defendants.

25.     In addition to violating both federal and California law for the role they played in misappropriating Gallagher's business information for Alliant's benefit, both Heater and Brush also had employment agreements with Gallagher containing confidentiality obligations.  Both Heater and Brush violated their employment agreements when, upon information and belief, they disseminated and misused Gallagher's confidential and/or trade secret information.  The Heater Agreement, wherein she agreed that "for a period of two (2) years following the termination of her employment, she will not divulge the Company's Confidential Information or make use of it for

7

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900  Fax: 415.743.6910

1   [her] own purpose or the purpose of another," is attached as **Exhibit C**.  *See* Exh. C, ¶ 13.  The

2   Brush Agreement, containing similar obligations, is attached as **Exhibit D**.  *See* Exh. D, § 7(B).

3   The misappropriated information described in Paragraphs 1-24 above was Gallagher's confidential

4   information pursuant to the employment agreements the Defendants signed.

5        26.    While other Californians were restricted in their movement and livelihood because

6   of a global pandemic, Tarantino, while still employed by Gallagher, hosted golfing outings, dined

7   with, and solicited Gallagher's clients to move their business to Alliant, all at Gallagher's expense,

8   within the weeks prior to his resignation from Gallagher.  These are some of the same clients

9   Tarantino sold to Gallagher and continued to service on Gallagher's behalf.

10       27.    For example, on or about June 19-20, 2020, Tarantino took at least two of

11  Gallagher's long-time clients to golf and dinner.  Upon information and belief, the purpose of these

12  client outings was to solicit their business for Tarantino at Alliant.  Tarantino charged these outings

13  to Gallagher.

14       28.    On or about that time, Heater stole confidential information and/or trade secret

15  documents regarding these same two clients, emailing key information on the accounts from her

16  Gallagher email account to her personal account.

17       29.    Less than one month later, on July 13, 2020, Tarantino and Heater tendered their

18  resignations to Gallagher, effective immediately.  Two other Gallagher employees, Salvatore

19  Tarantino and Taylor Tarantino, both sons to Tarantino, tendered their Gallagher resignations the

20  same day in favor of Alliant, also effective immediately.

21       30.    Within days of Tarantino's departure from Gallagher, those same clients that he had

22  wined and dined on Gallagher's dime on June 19-20 terminated their business relationship with

23  Gallagher in favor of Tarantino at Alliant.

24       31.    Several of the accounts Gallagher acquired from the Tarantino Brokerage, and/or

25  that Tarantino serviced on behalf of Gallagher, left Gallagher with Tarantino to join Alliant.  Upon

26  information and belief, in violation of the duties of care and loyalty Tarantino owed to Gallagher,

27  and in violation of the Tarantino Agreement, Tarantino had told Alliant, during his Alliant

28  recruitment, that these same accounts would leave Gallagher and follow him to Alliant.

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900  Fax: 415.743.6910

32.     On information and belief, Tarantino has effectuated these client solicitations either personally or through the use of straw-men, including his two sons Salvatore and Taylor Tarantino, and solicited and is continuing to solicit Gallagher's clients and employees indirectly through his sons and/or is using Gallagher's confidential information to do so.  On information and belief, this is pursuant to a common strategy to circumvent Tarantino's employment agreement.  Additionally, Taylor and Salvatore Tarantino failed to return their Gallagher-issued laptops containing Gallagher trade secrets until July 30, 2020, more than two weeks after their departure.

33.     Like Tarantino, as a high-level employee—and therefore fiduciary—of Gallagher, Machette owed Gallagher a duty of loyalty and care.  Unbeknownst to Gallagher, Machette was in discussions with Alliant as early as December 2019 regarding his recruitment to Alliant.

34.     Upon information and belief, and in violation of his duty of loyalty and care, Machette advertised to Alliant that, if Alliant hired him, he would bring with him many of the same customer accounts he sold to Gallagher.  In other words, while still employed as a high-level manager at Gallagher, Machette was advising Alliant that he would solicit his current Gallagher clients to leave Gallagher in favor of his new employer, in violation of his employment agreement and his fiduciary duties.  Moreover, upon information and belief, in violation of his duty of loyalty and his employment agreement, while employed with Gallagher, Machette was soliciting Gallagher employees, including Brush, to move with him.  Also while still a Gallagher employee, Machette actively reached out to his clients to solicit their business for Alliant.

35.     On July 27, 2020, two weeks after Alliant coordinated the resignations of Tarantino and Heater, among others, with no notice, Machette resigned from Gallagher to join Alliant. Machette's resignation was effective immediately.  At least two of the clients Machette provided services to at Gallagher have now moved to Alliant, and one of the clients whose information Brush misappropriated in May and June of 2020 has since left Gallagher for Alliant.

36.     Upon information and belief, the four Defendants worked together to cause *ten additional Gallagher employees to leave Gallagher in favor of Alliant*.  Many of these Gallagher employees worked directly with either Tarantino or Machette at Gallagher, servicing the same accounts that Alliant is now working to actively steal from Gallagher.  The recruitment of these

9

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900  Fax: 415.743.6910

employees to Alliant was un-prompted, and included overtures and solicitations of targeted employees at increased compensation rates.  For example, Heater contacted at least one Gallagher employee to encourage her to move to Alliant.  That employee then reached out to Alliant and promptly received an offer with specific compensation slightly higher than her Gallagher compensation.  Upon information and belief, Defendants knew which employees to target at Gallagher and how much to offer based on misappropriated compensation and performance information Defendants acquired at Gallagher.

37.     As of August 5, 2020, Defendants have successfully caused close to fifty (50) clients and 15 Gallagher employees to transfer to Alliant.

## THE PARTIES

38.     Gallagher is a corporation incorporated under the laws of the state of Delaware with its principal place of business in Rolling Meadows, Illinois.  Gallagher has offices in San Francisco and Lafayette, California, where Defendants worked and where Gallagher sustained its harm caused by Defendants' conduct.

39.     Upon information and belief, Don Tarantino is a resident of San Rafael, California.

40.     Upon information and belief, Bernadette Heater is a resident of Fairfield, California.

41.     Upon information and belief, Michael Machette is a resident of Orinda, California.

42.     Upon information and belief, Spencer Brush is a resident of Moraga, California.

## JURISDICTION AND VENUE

43.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 because this action arises under the laws of the United States.

44.     This Court has general personal jurisdiction over Defendants because, on information and belief, each Defendant is domiciled in California.  In addition, each Defendant's contacts with California are so extensive and substantial as to render each at home in this state.  The Court has specific personal jurisdiction over Defendants because each has personally availed themselves of California by committing the tortious acts and breaches of contract described herein in California, and causing injury to Gallagher in California.

//

10

45.     Venue is appropriate under 28 U.S.C. § 1391(b)(1) because, on information and belief, all Defendants are residents of California, and Defendants reside in this district.  Venue is furthermore appropriate under 28 U.S.C. § 1391(b)(2) because the tortious conduct and contractual breaches described herein occurred within this district.

## FIRST CAUSE OF ACTION

### (Breach of Contract, Against All Defendants)

46.     Gallagher repeats, realleges, and incorporates paragraphs 1 through 45 as if fully set forth herein.

47.     Each Defendant executed a written agreement that provided certain terms.  Each written agreement is valid and enforceable.

48.     The agreements were supported by adequate consideration.  Gallagher has performed, and at all times stood ready to perform, all the obligations to Defendants which Gallagher undertook in the employment agreements.  Gallagher has fulfilled its obligations and complied with any and all conditions and agreements of the employment agreements.

49.     Defendants have materially breached their employment agreements in at least the following ways:

    a.      <u>As to Tarantino</u>:

        i.      Taking Gallagher's confidential information and trade secrets with him to Alliant is a breach of Section 7 of the employment contract.

    b.      <u>As to Machette</u>:

        i.      Taking Gallagher's confidential information and trade secrets with him to Alliant is a breach of Section 7 of the employment contract.

    c.      <u>As to Heater</u>:

        i.      Taking Gallagher's confidential information and trade secrets with her to Alliant is a breach of Paragraph Thirteen of the employment contract.

    d.      <u>As to Brush</u>:

        i.      Taking Gallagher's confidential information and trade secrets with him to Alliant is a breach of Sections 7 & 8 of the employment contract.

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900  Fax: 415.743.6910

11

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900  Fax: 415.743.6910

50.    Gallagher has been damaged by these breaches in an amount to be determined at trial, but in excess of millions of dollars.  Among other things, Gallagher has been significantly damaged by business lost to Alliant due to Defendants' breaches of their employment contracts.

**SECOND CAUSE OF ACTION**

**(Trade Secret Misappropriation in Violation of 18 U.S.C. §§ 1832 *et seq.*, Against All Defendants)**

51.    Gallagher repeats, realleges, and incorporates paragraphs 1 through 45 as if fully set forth herein.

52.    Gallagher operates its business in interstate commerce across the United States.

53.    Gallagher's documents containing the value of its clients' claims over the years, client contacts, internal notes regarding particular clients' expectations and preferences, internal discussions and strategies regarding policy structuring, client premium reports, and extensive budget, financial, customer, and other information related to Gallagher's business and client retention and renewal strategies amongst other proprietary business information, qualify as "trade secrets" under the DTSA, as defined under 18 U.S.C. § 1893(3).

54.    Gallagher's documents containing the value of the clients' claims over the years, client contacts, internal notes regarding particular clients' expectations and preferences, internal discussions and strategies regarding policy structuring, client premium reports, and extensive budget, financial, customer, and other information related to Gallagher's business and client retention and renewal strategies amongst other proprietary business information derives independent economic value, actual or potential, from not being generally known; it is not readily ascertainable through proper means and Gallagher has taken reasonable measures to keep such information secret.

55.    Gallagher has taken, and continues to take, reasonable and appropriate steps to maintain the secrecy of its confidential and trade secret information, including by:

(a)    Requiring Gallagher employees to enter into agreements to govern employment and post-employment obligations;

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900  Fax: 415.743.6910

(b)     Ensuring proper procedures are in place at companies it acquires before proceeding with acquisitions, including execution of non-disclosure agreements;

(c)     Maintaining confidentiality policies governing the use and disclosure of confidential information, including under Gallagher's Global Standards of Business Conduct, its Electronic Information Policy, and other policies relating to the protection of confidential information;

(d)     Providing regular training to employees to protect Gallagher's confidential information;

(e)     Requiring rotating/retiring username/password access to Gallagher's proprietary data;

(f)     Requiring use of strong passwords for user accounts on both the file and email servers;

(g)     Monitoring suspicious activity; and

(h)     Using only secure connections to protect servers (secure VPN connections are required when accessing information remotely).

56.     During the course of their employment relationship, as acknowledged by their employment agreements, Defendants were given access to Gallagher's trade secrets and proprietary information, and they had a duty to keep such information confidential and refrain from using that information to Gallagher's detriment.

57.     Gallagher considers documents containing confidential information such as the value of the clients' claims over the years, client contacts, internal notes regarding particular clients' expectations and preferences, internal discussions and strategies regarding policy structuring, client premium reports, and extensive budget, financial, customer, and other information related to Gallagher's business and client retention and renewal strategies amongst other proprietary business information to be confidential and proprietary, and has taken reasonable steps as part of its ongoing business operations to maintain the confidential nature of this information.

//

//

13

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900  Fax: 415.743.6910

58.     Defendants have misappropriated Gallagher's trade secrets in the following ways:

a.     By acquiring the trade secrets, knowingly or with reason to know, that they were acquired through improper means, including but not limited to, through misrepresentation or breach of the duty to maintain the secrecy of the trade secrets or to limit the use of the trade secrets; and

b.     By disclosing or using the trade secrets without consent of Gallagher as part of Alliant's competing business.

59.     Defendants are using, and threaten to further misappropriate, Gallagher's trade secrets on behalf of their competing business unless enjoined.

60.     Defendants were aware that the information taken from Gallagher was protected both as confidential information, and as a trade secret, and worked together with the intention of taking as much of Gallagher's information as possible with them.

61.     Defendants' misappropriation of Gallagher's trade secrets has caused millions of dollars in harm through the loss of clients which, on information and belief, they poached from Gallagher using Gallagher's trade secrets.

62.     Defendants' misappropriation of Gallagher's trade secrets is also causing, and threatens to continue causing, Gallagher to suffer irreparable harm, including but not limited to loss of customers and business, loss of reputation and goodwill, and loss of its investment in its trade secrets.  This harm cannot be adequately remedied at law and Gallagher reserves the right to seek temporary, preliminary, and permanent injunctive relief prohibiting Defendants from using or misappropriating Gallagher's trade secrets.

63.     The acts of trade secret and confidential information misappropriation detailed above were the result of a coordinated effort amongst Defendants.  At all relevant times, Defendants conspired with each other to misappropriate Gallagher's trade secrets and confidential information, maximizing the damage their tortious conduct caused and creating the infrastructure needed for Defendants to seamlessly steal and service Gallagher clients, and to further solicit employees.

64.     At all relevant times each Defendant knew the Defendants intended to misappropriate the trade secrets and confidential information of Gallagher as set forth above.

1   Defendants agreed with, approved of, encouraged, and facilitated this tortious conduct and desired

2   it to be committed for the purpose of their joint scheme such that each Defendant is jointly liable for

3   all damages arising from Defendants' misappropriation of Gallagher's trade secrets.

4          65.     Gallagher is entitled to full compensatory and consequential damages for its actual

5   losses and for unjust enrichment caused by the Defendants' misappropriation of Gallagher's trade

6   secrets in an amount to be determined at trial.

7          66.     Defendants' conduct described herein constitutes willful and malicious

8   misappropriation of Gallagher's trade secrets under 18 U.S.C. § 1836(b)(2).

9          67.     In addition, on information and belief, Defendants' misappropriation was willful and

10   malicious and Gallagher is entitled to an award of exemplary damages and reasonable attorneys'

11   fees and costs incurred herein pursuant to 18 U.S.C. §1836(b)(3)(C)-(D).

12                          **THIRD CAUSE OF ACTION**

13   **(Trade Secret Misappropriation in Violation of Cal. Civ. Code §§ 3426 *et seq.*, Against All**

14                              **Defendants)**

15          68.     Gallagher repeats, realleges, and incorporates paragraphs 1 through 45 as if fully set

16   forth herein.

17          69.     Gallagher's documents containing the value of its clients' claims over the years,

18   client contacts, internal notes regarding particular clients' expectations and preferences, internal

19   discussions and strategies regarding policy structuring, client premium reports, and extensive

20   budget, financial, customer, and other information related to Gallagher's business and client

21   retention and renewal strategies amongst other proprietary business information, qualify as "trade

22   secrets" under the California Uniform Trade Secrets Act ("CUTSA"), as that term is defined in Cal.

23   Civ. Code. § 3426.1.

24          70.     Defendants have misappropriated Gallagher's trade secrets in the following ways:

25                  a.      By acquiring the trade secrets, knowingly or with reason to know, that they

26          were acquired through improper means, including but not limited to, through

27          misrepresentation or breach of the duty to maintain the secrecy of the trade secrets or to

28          limit the use of the trade secrets; and

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900  Fax: 415.743.6910

15

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900  Fax: 415.743.6910

b.     By disclosing or using the trade secrets without consent of Gallagher as part of Alliant's competing business.

71.     Upon information and belief, Defendants are using, and threaten to further misappropriate, Gallagher's trade secrets on behalf of their competing business unless enjoined.

72.     Defendants were aware that the information taken from Gallagher was protected both as confidential information, and as a trade secret, and worked together with the intention of taking as much of Gallagher's information as possible with them.

73.     Defendants' misappropriation of Gallagher's trade secrets has caused millions of dollars in harm through the loss of clients who, on information and belief, they poached from Gallagher using Gallagher's trade secrets.

74.     Defendants' misappropriation of Gallagher's trade secrets is also causing, and threatens to continue causing, Gallagher to suffer irreparable harm, including but not limited to loss of customers and business, loss of reputation and goodwill, and loss of its investment in its trade secrets.  This harm cannot be adequately remedied at law and Gallagher reserves the right to seek temporary, preliminary, and permanent injunctive relief prohibiting Defendants from using or misappropriating Gallagher's trade secrets.

75.     The acts of trade secret and confidential information misappropriation detailed above were the result of a coordinated effort amongst Defendants.  At all relevant times, Defendants conspired with each other to misappropriate Gallagher's trade secrets and confidential information, maximizing the damage their tortious conduct caused and creating the infrastructure needed for Defendants to seamlessly steal and service Gallagher clients, and to further solicit employees.

76.     At all relevant times each Defendant knew the Defendants intended to misappropriate the trade secrets and confidential information of Gallagher as set forth above. Defendants agreed with, approved of, encouraged, and facilitated this tortious conduct and desired it to be committed for the purpose of their joint scheme such that each Defendant is jointly liable for all damages arising from Defendants' misappropriation of Gallagher's trade secrets.

//

//

16

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900  Fax: 415.743.6910

77.     Gallagher is entitled to full compensatory and consequential damages for its actual loss for and for unjust enrichment caused by the Defendants' misappropriation of Gallagher's trade secrets in an amount to be determined at trial.

78.     In addition, on information and belief, Defendants' misappropriation was willful and malicious and Gallagher is entitled to an award of exemplary damages and reasonable attorneys' fees and costs incurred herein pursuant to Cal. Civ. Code. § 3426.4.

## FOURTH CAUSE OF ACTION

### (Breach of Fiduciary Duty Against Tarantino and Machette)

79.     Gallagher repeats, realleges, and incorporates paragraphs 1 through 45 as if fully set forth herein.

80.     Defendants Tarantino and Machette were high levels supervisors and managers of Gallagher.

81.     By virtue of their positions of trust, authority, and discretion within Gallagher, Tarantino and Machette owed Gallagher fiduciary duties, including the duty of loyalty.

82.     On information and belief, Tarantino and Machette breached their fiduciary duties to Gallagher by, among other things, soliciting customers and employees from Gallagher while they were still employed at Gallagher.

83.     On information and belief, Tarantino and Machette knew that their solicitation of Gallagher's customers and employees was against Gallagher's interests, and in their best interests and that of Gallagher's direct competitor, Alliant.

84.     Gallagher did not give informed consent to Tarantino's and Machette's solicitations.

85.     Tarantino's and Machette's solicitations of Gallagher's customers and employees while still working at Gallagher have injured Gallagher by depriving Gallagher of crucial employees and by causing Gallagher to lose valuable customers.  Gallagher has been injured by these breached in an amount to be proven at trial.

//

//

//

17

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900  Fax: 415.743.6910

## FIFTH CAUSE OF ACTION

### (Intentional Interference with Prospective Economic Advantage, Against Tarantino and Machette)

86.     Gallagher repeats, realleges, and incorporates paragraphs 1 through 45 as if fully set forth herein.

87.     As high level managers and client contacts at Gallagher, Tarantino and Machette had influential relationships with Gallagher clients, which were developed and strengthened over the years by virtue of their access to and knowledge of Gallagher's confidential and trade secret information, which Tarantino and Machette used to form successful relationships with Gallagher's clients.

88.     Despite knowing of these contracts and existing business relationships, Tarantino and Machette intentionally interfered with Gallagher's relationships by soliciting Gallagher's clients to cease their business with Gallagher and join them at Alliant.  Tarantino and Machette engaged in wrongful conduct in doing so, by (among other things) breaching their employment agreements and breaching their fiduciary duties to Gallagher, all of which was outside the boundaries of fair competition.

89.      Tarantino and Machette were aware that this conduct would disrupt Gallagher's business relationships, and intended this disruption to occur for the benefit of themselves and Alliant.

90.     Gallagher has been damaged in amount according to proof at trial as a result of this interference.

## SIXTH CAUSE OF ACTION

### (Unfair Business Practices in Violation of Cal. Bus. & Prof. Code. §§ 17200, *et seq.*, Against All Defendants)

91.     Gallagher repeats, realleges, and incorporates paragraphs 1 through 45 as if fully set forth herein.

92.     California Bus. & Prof. Code § 17200 prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business act or practice.

18

93. Defendants committed unlawful, unfair, and/or fraudulent business acts as defined by § 17200 by engaging in wrongful conduct including, but not limited to, unfairly and improperly inducing employees and customers to leave Gallagher in contravention of the employment agreements Defendants knew were in place, breaches of Tarantino's and Machette's fiduciary duties to Gallagher, and for their interference with Gallagher's client relationships.

94. As a direct and approximate result of these unlawful, unfair, and/or fraudulent acts and practices, Gallagher has incurred costs in interruptions of service to its clients, lost valued customers, and is now forced to compete with a competitor using Gallagher's former fiduciaries using Gallagher's information.

## PRAYER FOR RELIEF

WHEREFORE, Gallagher prays for relief as follows:

A. For general damages according to proof at trial;

B. For special, consequential, and other monetary damages according to proof;

C. For injunctive relief and specific performance. Gallagher has been irreparably harmed by Defendants' conduct. While some aspects of Defendants' conduct may be reducible to monetary damages, no amount of money can replace the damage to Gallagher's goodwill that Defendants' conduct is causing, nor can money replace the fact that Gallagher's trade secrets are now in the hands of a direct competitor, which is using those trade secrets to poach additional clients and employees from Gallagher. Indeed, as Tarantino's and Machette's employee agreements make clear, "the injury to [Gallagher] (and, as applicable, its affiliates) from any such breach [of the trade secret and non-solicitation sections of the employment agreement] would be incalculable and irremediable, and that money damages would therefore be an inadequate remedy for any such breach." Gallagher requests the following preliminary and permanent injunctive relief:

   i. for an indefinite period, all Defendants, and any individual(s) acting in concert with them, are enjoined from directly or indirectly using or disclosing Gallagher's trade secrets or confidential information in any way, including:

   1. soliciting, placing, marketing, accepting, aiding, counseling or consulting in the renewal, discontinuance or replacement of any insurance (including self-

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900  Fax: 415.743.6910

19

insurance) by, or handle self-insurance programs, insurance claims, risk management services or other insurance administrative or service functions or provide any employee benefit brokerage, consulting, or administration services, in the areas of group insurance, defined benefit and defined contribution pension plans, human resources and staffing services, individual life, disability and capital accumulation products, and all other employee benefit areas for, any Gallagher account for which the Defendants misappropriated Gallagher's trade secrets or confidential information;

2.  soliciting, inducing, or recruiting Gallagher employees to join a competitor, including Alliant, or otherwise leave Gallagher; and/or

3.  using or disclosing Gallagher's non-trade secret confidential information in any way;, and requiring a return of all Gallagher information and a search of Defendants' devices, systems, email, and storage devices to ensure all information has been returned and destroyed;

D.  For restitution caused by Defendants' unjust enrichment at Gallagher's expense;

E.  For punitive damages, to the extent available;

F.  For prejudgment interest;

G.  For recovery of its attorneys' fees and costs of suit;

H.  For judgment that all Defendants are liable for all tortious and unlawful conduct described herein as co-conspirators; and

I.  For such other and further relief as the Court may deem just and proper.

Dated:  January 15, 2020                    HOLLAND & KNIGHT LLP

By: _____
Sarah A. Marsey
Alex Hadduck
Attorneys for Plaintiff
ARTHUR J. GALLAGHER & CO.

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900  Fax: 415.743.6910

SECOND AMENDED COMPLAINT                    Case No.: 3:20-CV-05505-EMC