**MORGAN, LEWIS & BOCKIUS LLP**
Debra L. Fischer, Bar No. 142516
Seth M. Gerber, Bar No. 202813
2049 Century Park East, Suite 700
Los Angeles, California 90067
Phone:  +1.310.907.1000
Fax:      +1.310.907.1001
*debra.fischer@morganlewis.com*
*seth.gerber@morganlewis.com*

**MORGAN, LEWIS & BOCKIUS LLP**
Robert A. Lewis, Bar No. 83630
One Market, Spear Street Tower
San Francisco, CA  94105
Phone:  +1.415.442.1353
Fax:      +1.415.442.1001
*robert.lewis@morganlewis.com*

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Arthur J. Gallagher & Co., | Case No. 3:20-cv-05505 EMC |
| Plaintiff, | **Defendants' Answer to Plaintiff Arthur J. Gallagher & Co.'s Second Amended Complaint** |
| v. | |
| Don Tarantino, an individual; Bernadette Heater, an individual; Michael Machette, an individual; Spencer Brush, an individual, | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

Defendants' Answer to Second Amended Complaint

Defendants Don Tarantino, Bernadette Heater, Michael Machette, and Spencer Brush (collectively, the "Defendants"), hereby respond to the allegations in Plaintiff Arthur J. Gallagher's Second Amended Complaint ("SAC", filed and served on January 15, 2021) as follows:

## Nature of the Case

1.    Defendants answer paragraph 1 of the SAC as follows: Defendants admit that Alliant competes against Gallagher in the insurance brokerage market and that Alliant hired 15 people who previously worked for Gallagher in the Bay Area. Except as so admitted, Defendants deny the allegations.

2.    Defendants answer paragraph 2 of the SAC as follows:  Defendants admit that more than ten people who worked for Gallagher in the Bay Area resigned from Gallagher and started working for Alliant within an approximately five-day period, and that approximately 50 Gallagher customers made the decision to leave Gallagher after the resignations. Defendants further admit that over a span of weeks, Alliant hired 15 people who had previously worked for Gallagher in the Bay Area. Except as so admitted, Defendants deny the allegations.

3.    Defendants answer paragraph 3 of the SAC as follows:  Defendants lack sufficient information or belief to admit or deny the allegations regarding the CSM, and on that basis deny the allegations. Defendants deny the remaining allegations.

4.    Defendants answer paragraph 4 of the SAC as follows:  Defendants deny the allegations.

5.    Defendants answer paragraph 5 of the SAC as follows:  Defendants admit that Tarantino and Machette sold their insurance agencies to Gallagher many years ago (in 2006 and 2008, respectively). Defendants further admit that some of the clients that moved their business from Gallagher to Alliant after Tarantino and Machette resigned from Gallagher were clients of Tarantino and Machette when they owned their own agencies. Except as so admitted, Defendants deny the allegations.

6.    Defendants answer paragraph 6 of the SAC as follows:  Defendants state that any rulings and orders issued in litigation involving Alliant speak for themselves and are the best evidence of their content. Except as so stated, Defendants deny the allegations.

## General Allegations

7.    Defendants answer paragraph 7 of the SAC as follows:  Defendants admit the allegations.

8.    Defendants answer paragraph 8 of the SAC as follows:  Defendants admit that in or about July 2006, Gallagher acquired the Tarantino Brokerage and hired Tarantino as a broker. Defendants further admit that Tarantino, at the time of Gallagher's acquisition of the Tarantino Brokerage, was a stockholder, officer and director of the Tarantino Brokerage. Defendants further admit that Tarantino, as a broker at Gallagher, continued to work with clients he worked with while he was with the Tarantino Brokerage. Defendants state that the terms of the acquisition documentation of the Tarantino Brokerage speak for themselves and are the best evidence of their content. Except as so admitted and stated, Defendants deny the allegations.

9.    Defendants answer paragraph 9 of the SAC as follows:  Defendants admit that Tarantino entered into the agreement attached as Exhibit A to the Complaint. Defendants state that the agreement attached as Exhibit A speaks for itself and is the best evidence of its contents. Except as so admitted and stated, Defendants deny the allegations.

10.    Defendants answer paragraph 10 of the SAC as follows:  Defendants state that the agreement attached as Exhibit A speaks for itself and is the best evidence of its contents. Defendants deny the allegations to the extent they are inconsistent with the terms of the agreement.

11.    Defendants answer paragraph 11 of the SAC as follows:  Defendants admit that in or about January 2008, Gallagher acquired CEM, that CEM offered risk management, commercial property/casualty, and personal lines of insurance products and services, with an emphasis in the real estate and construction industries. Defendants further admit that

Machette, at the time of Gallagher's acquisition of CEM, was a stockholder, officer, director and employee of CEM. Defendants state that the terms of the acquisition documentation speak for themselves and are the best evidence of their content. Except as so admitted and stated, Defendants deny the allegations.

12.    Defendants answer paragraph 12 of the SAC as follows:  Defendants admit that Machette agreed to the agreement attached as Exhibit B to the Complaint. Defendants state that the agreement attached as Exhibit B speaks for itself and is the best evidence of its contents. Except as so admitted and stated, Defendants deny the allegations to the extent they are inconsistent with the terms of the agreement.

13.    Defendants answer paragraph 13 of the SAC as follows:  Defendants admit that Tarantino, after joining Gallagher in 2006, worked with the clients that made the decision to follow Tarantino to Gallagher. Except as so admitted, Defendants deny the allegations.

14.    Defendants answer paragraph 14 of the SAC as follows:  Defendants admit that in or about 2009, Tarantino was given the title of Bay Area Chairman because Tarantino had his own book of business and it was believed the title would help Tarantino bring in additional business. Except as so admitted, Defendants deny the allegations.

15.    Defendants answer paragraph 15 of the SAC as follows:  Defendants admit that Tarantino received compensation characterized by Gallagher as a management fee, and that during his years at Gallagher, Tarantino did receive access to materials that Gallagher referenced as confidential information. Except as so admitted, Defendants deny the allegations.

16.    Defendants answer paragraph 16 of the SAC as follows:  Defendants admit that Machette, after joining Gallagher in 2008, worked with the clients that made the decision to follow him to Gallagher. Defendants further admit that Gallagher gave Machette the title of "Area President" to help Machette bring in clients. Defendants further admit that Machette, during his years at Gallagher, received access to materials that Gallagher referenced as confidential information. Except as so admitted, Defendants deny the allegations.

17.   Defendants answer paragraph 17 of the SAC as follows:  Defendants admit that, during 2019, Tarantino and Machette separately and independently discussed with Alliant the possibility of going to work for Alliant. Except as so admitted, Defendants deny the allegations.

18.   Defendants answer paragraph 18 of the SAC as follows:  Defendants deny the allegations.

19.   Defendants answer paragraph 19 of the SAC as follows:  Defendants deny the allegations.

20.   Defendants answer paragraph 20 of the SAC as follows:  Defendants deny the allegations.

21.   Defendants answer paragraph 21 of the SAC as follows:  Defendants admit that Heater previously worked closely with Tarantino at the Tarantino Brokerage and at Gallagher, and that Heater resigned from Gallagher and joined Alliant after learning that Tarantino had resigned from Gallagher and gone to work at Alliant. Except as so admitted, Defendants deny the allegations.

22.   Defendants answer paragraph 22 of the SAC as follows:  Defendants admit that Heater and many other Gallagher employees were required to work remotely, including from home, after Gallagher closed its Bay Area offices in or about March 2020 due to the COVID-19 pandemic, and that in the course of performing her work responsibilities for Gallagher while working remotely, Heater emailed Gallagher materials to her personal email address so she could work with them efficiently and conveniently. Defendants lack sufficient information or belief to admit or deny the allegations about particular materials Heater emailed to her personal account and when she emailed them to her personal account, and on that basis deny them. Otherwise, Defendants deny the allegations.

23.   Defendants answer paragraph 23 of the SAC as follows:  Defendants admit that Brush is Machette's son-in-law, that Brush went to work at Gallagher in 2012, left Gallagher in 2014, and returned to Gallagher in 2016, that Machette and Brush serviced many of the same accounts at Gallagher, and that Brush resigned from Gallagher and went

to work at Alliant after learning that Machette had resigned from Gallagher and joined Alliant. Defendants further admit that Brush and many other Gallagher employees were required to work remotely, including from home, after Gallagher closed its offices in or about March 2020 due to the COVID-19 pandemic, and that in the course of performing his work responsibilities for Gallagher while working remotely, Brush emailed Gallagher materials to his personal email address so he could work with them efficiently and conveniently. Otherwise, Defendants deny the allegations.

24. Defendants answer paragraph 24 of the SAC as follows: Defendants deny they misappropriated any information from Gallagher. Otherwise, Defendants lack sufficient information or belief to admit or deny the allegations, and on that basis deny them.

25. Defendants answer paragraph 25 of the SAC as follows: Defendants admit that Heater and Brush entered into agreements with Gallagher, and that those agreements are attached as Exhibits C and D to the Complaint. Defendants state that those agreements speak for themselves and are the best evidence of their contents. Except as so admitted and stated, Defendants deny the allegations.

26. Defendants answer paragraph 26 of the SAC as follows: Defendants admit that Tarantino, in or about June 2020, took clients with July 2020 renewals to golf and dinner and charged these client expenses to Gallagher, and that Tarantino completed the renewals for these clients on behalf of Gallagher while he was still at Gallagher, and that Gallagher received the commissions for the renewals. Except as so admitted, Defendants deny the allegations.

27. Defendants answer paragraph 27 of the SAC as follows: Defendants admit that Tarantino, in or about June of 2020, took clients with July 2020 renewals to golf and dinner and charged these client expenses to Gallagher, and that Tarantino completed the renewals for these clients on behalf of Gallagher while he was still at Gallagher, and that Gallagher received the commissions for the renewals. Except as so admitted, Defendants deny the allegations.

28. Defendants answer paragraph 28 of the SAC as follows: Defendants deny the

1    allegations.

2          29.    Defendants answer paragraph 29 of the SAC as follows:  Defendants admit the

3    allegations.

4          30.    Defendants answer paragraph 30 of the SAC as follows:  Defendants admit that

5    Tarantino, in or about June of 2020, took clients with July 2020 renewals to golf and

6    dinner and charged these client expenses to Gallagher, and that Tarantino completed the

7    renewals for these clients on behalf of Gallagher while he was still at Gallagher, and that

8    Gallagher received the commissions for the renewals. Defendants further admit that the

9    clients Tarantino took golfing and to dinner in or about June of 2020 moved their business

10   from Gallagher to Alliant after learning that Tarantino had left Gallagher and joined

11   Alliant. Except as so admitted, Defendants deny the allegations.

12         31.    Defendants answer paragraph 31 of the SAC as follows:  Defendants admit that

13   certain clients that followed Tarantino to Gallagher when Gallagher acquired the

14   Tarantino Brokerage also made the decision to move their business from Gallagher to

15   Alliant after learning that Tarantino left Gallagher and joined Alliant. Except as so

16   admitted, Defendants deny the allegations.

17         32.    Defendants answer paragraph 32 of the SAC as follows:  Defendants admit that

18   Taylor Tarantino and Salvatore Tarantino returned their Gallagher-issued laptops to

19   Gallagher on or about July 30, 2020. Except as so admitted, Defendants deny the

20   allegations.

21         33.    Defendants answer paragraph 33 of the SAC as follows:  Defendants admit that

22   Machette talked to Alliant about the possibility of working at Alliant in 2019. Except as so

23   admitted, Defendants deny the allegations.

24         34.    Defendants answer paragraph 34 of the SAC as follows:  Defendants deny the

25   allegations.

26         35.    Defendants answer paragraph 35 of the SAC as follows:  Defendants admit that

27   Machette resigned from Gallagher effective immediately on July 27, 2020, which was two

28   weeks after some others who previously worked at Gallagher resigned from Gallagher and

joined Alliant, and that some of the clients Machette serviced while he worked for Gallagher moved their business to Alliant after learning of Machette's resignation from Gallagher. Except as so admitted, Defendants deny the allegations.

36.   Defendants answer paragraph 36 of the SAC as follows:  Defendants admit that additional Gallagher employees who left Gallagher and joined Alliant after Tarantino and Machette resigned from Gallagher had worked with Tarantino and/or Machette at Gallagher. Otherwise, Defendants deny the allegations.

37.   Defendants answer paragraph 37 of the SAC as follows:  Defendants deny the allegations.

## The Parties

38.   Defendants answer paragraph 38 of the SAC as follows:  Defendants admit that Gallagher is a Delaware corporation and has offices in San Francisco and Lafayette, and that Defendants worked in those offices. Defendants lack sufficient information or belief to admit or deny the allegations regarding Gallagher's principal place of business, and on that basis deny the allegations. Otherwise, Defendants deny the allegations.

39.   Defendants answer paragraph 39 of the SAC as follows:  Defendants admit the allegations.

40.   Defendants answer paragraph 40 of the SAC as follows:  Defendants admit the allegations.

41.   Defendants answer paragraph 41 of the SAC as follows:  Defendants admit the allegations.

42.   Defendants answer paragraph 42 of the SAC as follows:  Defendants admit the allegations.

## Jurisdiction and Venue

43.   Defendants answer paragraph 43 of the SAC as follows:  This paragraph asserts conclusions of law that do not require a response.

44.   Defendants answer paragraph 44 of the SAC as follows:  Defendants admit they each of them are domiciled in California. This paragraph asserts conclusions of law that does not require a response. Otherwise, Defendants deny the factual allegations.

45.   Defendants answer paragraph 45 of the SAC as follows:  Defendants admit they are residents of California and reside within the Northern District of California. Otherwise, this paragraph asserts conclusions of law that do not require a response.

## First Cause of Action
## (Breach of Contract, Against All Defendants)

46.   Defendants answer paragraph 46 of the SAC as follows:  Defendants repeat, reallege, and incorporate paragraphs 1 through 45 of this Answer as if fully set forth herein.

47.   Defendants answer paragraph 47 of the SAC as follows:  Defendants admit that they each executed a written agreement with Gallagher and that the terms of those agreements speak for themselves and are the best evidence of their contents. Defendants state that in a November 2, 2020 order, the Court ruled that "in light of both the timing restriction *and* activity restriction, the Court concludes that the noncompete provisions in Mr. Tarantino and Mr. Machette's employment agreements are not enforceable; the provisions do not fall within the protection afforded by § 16601 exception." Because the Court held that the noncompete provisions in the contracts are not enforceable, the Court dismissed with prejudice the contract claim to the extent it is based on the alleged breach of the noncompete provisions by Tarantino and Machette and stated that the "only remaining contract theory is that the individual defendants breached the confidentiality provisions in their employment contracts." Except as so admitted and stated, Defendants state that this paragraph asserts conclusions of law that do not require a response.

48.   Defendants answer paragraph 48 of the SAC as follows:  This paragraph asserts conclusions of law that do not require a response.

49.   Defendants answer paragraph 49 of the SAC as follows:  Defendants deny the allegations.

50.   Defendants answer paragraph 50 of the SAC as follows:  Defendants deny the allegations.

## Second Cause of Action

## (Trade Secret Misappropriation in Violation of 18 U.S.C. §§ 1832 *et seq.*, Against All Defendants)

51.   Defendants answer paragraph 51 of the SAC as follows:  Defendants repeat, reallege, and incorporate paragraphs 1 through 45 of the Answer as if fully set forth herein.

52.   Defendants answer paragraph 52 of the SAC as follows:  Defendants admit the allegations.

53.   Defendants answer paragraph 53 of the SAC as follows:  Defendants deny the allegations.

54.   Defendants answer paragraph 54 of the SAC as follows:  Defendants deny the allegations.

55.   Defendants answer paragraph 55 of the SAC as follows:  Defendants deny the allegations.

56.   Defendants answer paragraph 56 of the SAC as follows:  Defendants admit that they had employment agreements with Gallagher and that the agreements speak for themselves and constitute the best evidence of their contents. Defendants further admit that, during the course of their employment history with Gallagher, they were on occasion given access to information that Gallagher asserted to be its confidential information. The remaining allegations in the paragraph assert conclusions of law that do not require a response.

57.   Defendants answer paragraph 57 of the SAC as follows:  Defendants admit that Defendants' agreements with Gallagher included provisions purporting to define what Gallagher considers to be its "Confidential Information" and that Defendants were aware of these provisions, and further state that those provisions speak for themselves and are the best evidence of their contents. Except as so admitted and stated, Defendants lack

sufficient information or belief to admit or deny the allegations, and on that basis denies them.

58.   Defendants answer paragraph 58 of the SAC as follows:  Defendants deny the allegations.

59.   Defendants answer paragraph 59 of the SAC as follows:  Defendants deny the allegations.

60.   Defendants answer paragraph 60 of the SAC as follows:  Defendants deny the allegations.

61.   Defendants answer paragraph 61 of the SAC as follows:  Defendants deny the allegations.

62.   Defendants answer paragraph 62 of the SAC as follows:  Defendants deny the allegations.

63.   Defendants answer paragraph 63 of the SAC as follows:  Defendants deny the allegations.

64.   Defendants answer paragraph 64 of the SAC as follows:  Defendants deny the allegations.

65.   Defendants answer paragraph 65 of the SAC as follows:  Defendants deny the allegations.

66.   Defendants answer paragraph 66 of the SAC as follows:  Defendants deny the allegations.

67.   Defendants answer paragraph 67 of the SAC as follows:  Defendants deny the allegations.

# Third Cause of Action

# (Trade Secret Misappropriation in Violation of Cal. Civ. Code §§ 3426 *et seq.*, Against All Defendants)

68.   Defendants answer paragraph 68 of the SAC as follows:  Defendants repeat, reallege, and incorporate paragraphs 1 through 45 of this Answer as if fully set forth herein.

69.   Defendants answer paragraph 69 of the SAC as follows:  Defendants deny the allegations.

70.   Defendants answer paragraph 70 of the SAC as follows:  Defendants deny the allegations.

71.   Defendants answer paragraph 71 of the SAC as follows:  Defendants deny the allegations.

72.   Defendants answer paragraph 72 of the SAC as follows:  Defendants deny the allegations.

73.   Defendants answer paragraph 73 of the SAC as follows:  Defendants deny the allegations.

74.   Defendants answer paragraph 74 of the SAC as follows:  Defendants deny the allegations.

75.   Defendants answer paragraph 75 of the SAC as follows:  Defendants deny the allegations.

76.   Defendants answer paragraph 76 of the SAC as follows:  Defendants deny the allegations.

77.   Defendants answer paragraph 77 of the SAC as follows:  Defendants deny the allegations.

78.   Defendants answer paragraph 78 of the SAC as follows:  Defendants deny the allegations.

## Fourth Cause of Action

## (Breach of Fiduciary Duty Against Tarantino and Machette)

79.   Defendants answer paragraph 79 of the SAC as follows:  Defendants repeat, reallege, and incorporate paragraphs 1 through 45 of this Answer as if fully set forth herein.

80.   Defendants answer paragraph 80 of the SAC as follows:  Defendants deny the allegations.

81.   Defendants answer paragraph 81 of the SAC as follows:  Defendants deny the

Defendants' Answer to Second Amended Complaint

allegations.

82.   Defendants answer paragraph 82 of the SAC as follows:  Defendants deny the allegations.

83.   Defendants answer paragraph 83 of the SAC as follows:  Defendants deny the allegations.

84.   Defendants answer paragraph 84 of the SAC as follows:  Defendants deny the allegations.

85.   Defendants answer paragraph 85 of the SAC as follows:  Defendants deny the allegations.

## Fifth Cause of Action
## (Intentional Interference with Prospective Economic Advantage, Against Tarantino and Machette)

86.   Defendants answer paragraph 86 of the SAC as follows:  Defendants repeat, reallege, and incorporate paragraphs 1 through 45 of this Answer as if fully set forth herein.

87.   Defendants answer paragraph 87 of the SAC as follows:  Defendants admit that Tarantino and Machette invested their time and energy in developing and strengthening their client relationships over the years and that, by virtue of the trust their clients came to have in them, Tarantino and Machette had some influence with their clients with respect to client decisions relating to insurance matters. Except as so admitted, Defendants deny the allegations.

88.   Defendants answer paragraph 88 of the SAC as follows:  Defendants deny the allegations.

89.   Defendants answer paragraph 89 of the SAC as follows:  Defendants deny the allegations.

90.   Defendants answer paragraph 90 of the SAC as follows:  Defendants deny the allegations.

1

## Sixth Cause of Action

## (Unfair Business Practices in Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*, Against All Defendants)

91.   Defendants answer paragraph 91 of the SAC as follows:  Defendants repeat, reallege, and incorporate paragraphs 1 through 45 of this Answer as if fully set forth herein.

92.   Defendants answer paragraph 92 of the SAC as follows:  This paragraph asserts conclusions of law that do not require a response.

93.   Defendants answer paragraph 93 of the SAC as follows:  Defendants state that in a November 2, 2020 order, the Court ruled that "in light of both the timing restriction *and* activity restriction, the Court concludes that the noncompete provisions in Mr. Tarantino and Mr. Machette's employment agreements are not enforceable; the provisions do not fall within the protection afforded by § 16601 exception." Because the Court held that the noncompete provisions in the contracts are not enforceable, the Court dismissed with prejudice the contract claim to the extent it is based on the alleged breach of the noncompete provisions by Tarantino and Machette and stated that the "only remaining contract theory is that the individual defendants breached the confidentiality provisions in their employment contracts." Defendants further state that Gallagher's attempt to enforce noncompete provisions which violate California Business & Professions Code section 16000 constitutes unfair competition in violation of section 17200. Otherwise, Defendants deny the allegations. Except as so admitted and stated, this paragraph asserts conclusions of law that do not require a response.

94.   Defendants answer paragraph 94 of the SAC as follows:  Defendants deny the allegations.

## Affirmative Defenses

In further response to the Complaint, Defendants plead the following affirmative defenses:

1.   Gallagher's claims should be dismissed, in whole or in part, because they have

1    no basis in law or fact.

2          2.    Gallagher's claims are barred, in whole or in part, because Gallagher, by its own

3    acts/or omissions, has waived each and every cause of action or other right against

4    Defendants.

5          3.    By reason of Gallagher's acts or omissions, Gallagher is estopped from seeking

6    or obtaining any relief from Defendants under each of their purported claims for relief.

7          4.    Gallagher's claims are barred, in whole or in part, by the doctrines of consent

8    and/or acquiescence.

9          5.    Gallagher's claims are barred, in whole or in part, by the doctrine of laches.

10         6.    Gallagher's claims are barred, in whole or in part, to the extent that provisions

11   in the asserted agreements violate California Business & Professions Code section 16600

12   and fundamental California public policy in favor of employee mobility and fair

13   competition and are unlawful, void and unenforceable under applicable law.

14         7.    Gallagher's claims fail, in whole or in part, because they are based, either in

15   whole or in part, on contractual provisions that are unconscionable and therefore may not

16   be enforced.

17         8.    To the extent Defendants' purported liability is premised on alleged underlying

18   breaches of contract by Defendants, Defendants' performance was excused by virtue of

19   Gallagher's material breach of contracts with Defendants, constructive discharge of

20   Defendants, breach of the implied covenant of good faith and fair dealing inherent in

21   Gallagher's contracts with Defendants, and/or other wrongs.

22         9.    Gallagher's claims are barred, in whole or in part, by the competitor's privilege.

23   A competitor is entitled to compete freely, absent statutory prohibitions, illegitimate

24   means, or unlawful conduct, and California has a fundamental public policy in favor of

25   employee mobility and open competition, as memorialized in California Business &

26   Professions Code section 16600.

27         10.   Gallagher's claims are barred, in whole or in part, on the grounds that

28   Defendants' alleged conduct was at all times justified and undertaken in the good faith

exercise of a valid and legitimate business purpose.

11.   Gallagher's claims are barred, in whole or in part, on the grounds that the purported trade secret information was readily ascertainable by proper means at the time of the alleged misappropriation.

12.   Gallagher's claims are barred, in whole or in part, on the grounds that Gallagher failed to take reasonable measures to protect its alleged trade secrets, and has therefore waived the purported trade secret protection.

13.   Gallagher's claims are barred, in whole or in part, on the grounds that no information of Gallagher was confidential because Gallagher failed to treat it as confidential or such information was in the public domain or otherwise readily ascertainable by proper means.

14.   Gallagher's claims and the conspiracy allegations are barred, in whole or in part, to the extent they are preempted under the California Uniform Trade Secrets (Cal. Civil Code § 3426.7) because the claims are based on the same nucleus of facts concerning allegations of misappropriation of confidential and trade secret information.

15.   Gallagher's claim for misappropriation of trade secrets under the federal Defend Trade Secrets is barred to the extent it is based on conspiracy allegations because 18 U.S.C. § 1836(b) cannot be read to imply that a private right of action lies for redress of Section 1832. Nowhere in Section 1832(a) does the statutory text mention a private right of action to redress violations of its prohibitory terms, and prior to the 2016 amendment to Chapter 90, courts uniformly held that Section 1832(a) does not provide a private right of action for redress of the criminal conduct that it prohibits. Section 1836 permits a limited right to bring private civil actions for limited purposes.

16.   Gallagher's claim for unfair business practices is barred, in whole or in part, to the extent the alleged underlying acts giving rise to the claim did not occur or were not unlawful.

17.   By reason of its unclean hands, Gallagher is precluded from recovery in this action. Gallagher has acted with unclean hands in at least the following respects:

- ▪ Gallagher humiliated Tarantino and damaged his business reputation when it sent out a blast email to approximately 10,000 to 15,000 transportation companies spotlighting a judgment entered against one of Tarantino's clients. Although Gallagher promised Tarantino it would apologize to the client, Gallagher failed to ever do so.

- ▪ Gallagher failed to fulfill its promise to compensate Tarantino for his referrals to producers in Gallagher's benefits department (Tarantino worked in the property and casualty space). When Tarantino complained to Gallagher management, he was told that Gallagher did not want to pay Tarantino for his referrals because then it would have to pay other producers for their referrals.

- ▪ Gallagher rejected a proposal made by Tarantino to help clients get coverage for COVID-related losses through SARS endorsements. Gallagher explained to Tarantino that it feared that Gallagher might be sued by clients whose brokers had not recommended SARS policy endorsements.

- ▪ Gallagher ignored repeated complaints by Defendants about the lack of quality support staff. This resulted in Tarantino losing significant business.

- ▪ In a November 2, 2020 order, the Court ruled that "in light of both the timing restriction *and* activity restriction, the Court concludes that the noncompete provisions in Mr. Tarantino and Mr. Machette's employment agreements are not enforceable; the provisions do not fall within the protection afforded by § 16601 exception." Because the Court held that the noncompete provisions in the contracts are not enforceable, the Court dismissed with prejudice the contract claim to the extent it is based on the alleged breach of the noncompete provisions by Tarantino and Machette and stated that "[t]he only remaining contract theory is that the individual defendants breached the confidentiality provisions in their employment contracts." Gallagher's attempt to enforce noncompete provisions that violate California Business & Professions Code section 16000 constitutes unfair competition in violation of section 17200.

18.   Without admitting that Defendants are at fault in any way or that Gallagher has incurred any damages, and solely for the purpose of stating this defense, any award to Gallagher under each of its claims for relief is barred on the ground that every action taken by Defendants constituted a good faith belief that such action was lawful.

19.   To the extent Gallagher has suffered any harm, such harm is calculable, and pecuniary compensation would afford adequate relief.

20.   To the extent Gallagher has suffered any damages, any damages awarded to Gallagher must be reduced on the basis of Gallagher's failure and refusal to make reasonable efforts to mitigate, minimize, or avoid any alleged damages, including by making competitive offers to provide products and services.

21.   Gallagher is not entitled to recover punitive damages or exemplary damages under each of their claims for relief on the ground that any award of punitive or exemplary damages as applied in the context of this case would violate Defendants' constitutional rights under the provisions of the United States and any applicable state Constitutions, including, but not limited to the Due Process Clause under the Fourteenth Amendment to the United States Constitution.

22.   Gallagher's request for injunctive relief should be dismissed, in whole or in part, because Gallagher cannot show the existence of irreparable harm or the absence of an adequate remedy at law.

## Affirmative Defenses Reserved

Defendants reserve the right to amend these affirmative defenses to add, delete, or modify defenses based upon legal theories that might or will be divulged through clarification of pleadings, through discovery, or through further legal analysis.

## Prayer for Relief

Defendants request that the Court:

A.   Dismiss Gallagher's Second Amended Complaint, deny Gallagher's requested relief, and enter judgment in favor of Defendants;

B.   Award Defendants their costs, reasonable attorneys' fees, and disbursements incurred in defending this action; and

C.   Award Defendants such other and further relief as it deems proper.

## Demand for Jury Trial

Defendants demand a jury trial of all claims and defenses triable by jury.

Respectfully submitted,

DATED: January 29, 2021          MORGAN, LEWIS & BOCKIUS LLP


By: ___/s/___ Seth M. Gerber_____
                        Seth M. Gerber

Attorneys for Defendants

Defendants' Answer to Second Amended Complaint

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

# Certificate of Service

I hereby certify that, on January 29, 2021, the foregoing document entitled "**Defendants' Answer to Plaintiff Arthur J. Gallagher & Co.'s Second Amended Complaint**" was filed via the Case Management/Electronic Case Filing (CM/ECF) system, with service to be made on all parties deemed to have consented to electronic service via the automated generation and e-mailing of a Notice of Electronic Filing (NEF) by the CM/ECF system.

Dated:  January 29, 2021                    /s/ Seth M. Gerber
                                            Seth M. Gerber

- 19 -

Defendants' Answer to Second Amended Complaint